ALEXANDRA B. GEORGESCU
1150 TENNYSON ST. #2
MANHATTAN BEACH, CA 90266



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

## LACV1905603-CAS-Ex

ALEXANDRA B GEORGESCU,
Aka Brenda George and
Gabrieila Georgescu

Petitioner

v

PAUL N CLEMMONS,
Principal at Deloitte Consulting
and,
DELOITTE CONSULTING

Respondent

In a petition for removal from the Circuit
Court of CONTRA COSTA COUNTY

State court cause no.: D1700739

Notice of Removal

## Notice of Petition; and, Verified Petition For Warrant Of Removal

Come now the Petitioners, Alexandra B Geogescu and in direct support of their request for
removal of the above-encaptioned state court cause into the jurisdiction of this United States
District Court, and on the federal questions involved, herein allege, state, and provide:

JURISDICTION

This Court now has proper jurisdiction over this cause of action for removal, pursuant to, but not
limited to, the following statutory authorities: 15 USC § 1692k(d), and also 28 USC § 1443(1),
28 USC § 1446(b), 28 USC § 1331, and 28 USC § 1367. Moreover, this Court is an Article III
court with the express authority to hear and adjudicate any questions arising under the
Constitution, Laws, and Treaties of the United States, including but not limited to the Bill of
Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment,

the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declaration of Human Rights, with Reservations. See the Article VI Supremacy Clause of the Constitution of the United States of America, as lawfully amended (hereinafter "Federal Constitution").

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the defendant in contempt and vexatious actions hereby removes this civil action from the Superior Court of California for the County of Contra Costa where it is currently pending as Case No. D17 00736 improperly consolidated with D16 04193 to the United States District Court for the Central District of California, Western Division. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) on the grounds that complete diversity exists between all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. The amount represents the unpaid medical bills and areas according to the standing judgement in excess of $110,000 owed to the Plaintiff. Plaintiff Alexandra B Georgscu, a lawful US citizen also known Brenda George is a resident for 20 years, citizen and domiciliary of the State of California, Los Angeles and has a dual roumanian citizenship as well as son, Andrew Georgescu Clemmons formerly known as Andrew George and mother whose actions are the subject of the contempt proceedings, Prof Doctor Gabreila Georgescu is a sole romanaian citizen. Defendant Paul Clemmons, and his firm Deloitte and Touch is a Delaware limited liability company with its principal place of business in the State of New York, NY.

INTRODUCTION

Petitioners complain of various willful, systemic deprivations of fundamental Rights guaranteed by the Federal Constitution, and/or by federal law, and which deprivations are civil violations of 42 USC § 1983, and also criminal violations of 18 U.S.C. §§ 241 and 242.

BRIEF OF THE CASE

In 2012, after a paternity adjudication, a Stipulated Judgement of Paternity under BF044642 was entered in Los Angeles on Oct 29, 2012 with Waivers of Rights to new trial signed by both parties, granting the mother full custodial rights and liberal visitations to the father and shared legal custody. Instead of returning to mediation for a step up plan of the visitation rights or comply with the terms of the judgement on child support and medical areas, the father engaged in a conspiracy to move the case in Contra Costa on exparte based on false pretense on Sep 2, 2016. In an elaborated plot of power and local undue influence, and before the mother had the opportunity to show cause venue with counsel representation on Feb 22, 2017 in LA the file was gone in an inconvenient forum in Contra Costa right after child support agency collected unpaid monthly support and intated the collection of the unpaid areas in controversy here in excess of $110,000.

In 2016, I become the Respondent of this second Paternity action, following a denial of the modification of Judgement in the Los Angeles court where I was a Petitioner, I was served with a SECOND Summons of Paternity in Contra Costa under D1604193 filled on Dec 22, 2016 with a UCCJEA Jurisdiction stating in contradiction to the previous request for transfer in LA that the child did resided in LA, six months prior to commencement of this proceeding. By Unclean Hands and in haste my motion to dismiss this "piece meal litigation"and transfer back to proper venue in LA was denied and custody was immediately changed on a mediator recommendation absent an evidentiary hearing. Only after the custody was changed the cases were consolidated with the transferred case from LA under the master case D1700739.

In 2018, despite a lack of RFO a new custody was changed "swapped" to the father removing the child from Los Angeles on Exparte on June 15, 2018 and a new trial of July 17-19, 2018 entirely granted full custody to the 6 years absent father with two times per year optional visitation for the mother and legal custody was removed on rebuttal arguments despite a lack of RFO. No exigent need, harm or evidence was presented to justify such an infringement of rights of the mother and father didnt bring one witness as he previously stated as the reason on the move to Contra Costa. All was based on Judge Hiramoto admission of the father "state of mind" exceptions to the rule of evidene and discrimination on basis of contry of origin of the mother.

The current orders of July 19, 2018 state as RFO, request for orders the Dec 23, 2016 filed with the Second Paternity Summons and despite this RFO being lodged under D1604193 docket. The reuquest was for an evaluation and meaningful visitations not for full physical and legal custody to the father and suspension of the mother to two times per year against Califonia state policy of Frequent and Continuous Contact. No exigent need or path to regain custody to the mother.

In 2019 in an effort to obstruct the mother's right to remedy a string of punitive actions against the mother was set forth in Contra Costa, after appeal filled, currently dismissed for inability to produce full records and after a Verified Statement of Disqualification under 170.3 was served and filled on Jan 25th, 2019 on Judge Hiramoto.

After an unconstitutional blanket gag order was issued on exparte Nov 22, 2018 based on a confidential email improperly distributed by Ethics Officer of Deloitte in a blunt infringement on First Amendment Rights "not the discuss this case with any other person" . A retaliatory string of Contempt actions and a Permanent Restraining orders for five years was issued on the mother for the same gag order supposed violation by making an alledged wellfare call to the police about the child on Jan 11, 2019 despite lack of report evidence or witness. Despite the Contempt not being personally served, ambiguous and expired orders the persecution continues and a second contempt action was filled for a falsified email allegedly sent by my mother from Romania to his employment Deloitte in New York to a Shari Coats. This email is attributed to me despite any

evidence that I am a party to this proceedings. My mother testifies it was sent by her in Romania but not to Shari Coats and and IP address could easly show that if in fact Contra Costa was a court of Truth in pursuit of faithful administration of Justice.

A new Vexatious Litigant action is set forth on the same day of June 28, 2019 interfering with my only meaningfull custodial time in a year with my son in Los Angeles. The unsubtantiated accusations, slander, threats, intimidation and abuse of legal process with 40 plus actions and motions moslty on exparte in Contra Costa I am in fear for my life and prevented from my right to remedy.

LEGAL ABUSE GROUNDS FOR REMOVAL

Judge Joni Hiramoto abuse of Contempt powers, DV orders and Vexatious litigant in violation of Title 18 U.S. Code § 1512 [Tampering with a witness, victim, or an informant] and particularly the statute's subsections (b) [intimidation/threats], (c) [record tampering], and/or (d)[harassment] and 18 U. S Code $1513 (Retaliating against a victim, witness or informant) judges impeding disclosure to federal law enforcement officials of what appears to be their own judicial misconduct; specifically, judges suppressing probative evidence of their own Title 18 USC §§ 241 [conspiracy to violate federal rights] and/or 242 [unlawful discrimination under color of law] offenses. This violations arise from a course of legal trickeries, collusion and favoritism to the powerful prvilledged local party and willful discriminationtion to the foreign born mother.

Within the proceedings of the instant state court, Petitioners have duly advised the state court judge, and all other parties – multiple times in official writing each – that certain actions and judicial events are now existing, have been done, and are now further threatened against the Petitioners, in clear, unambiguous violations of basic due process, the Federal Constitution, state statutory law, federal statutory law, the relevant rulings by the high state courts, and/or against the relevant rulings held unanimously by all of the several federal Circuit Courts of Appeals.

This petition for warrant of removal inures to the very essence of the enactment and clearly expressed purpose of 28 USC § 1443(1) by Congress, i.e.: to provide a remedy for removal to a United States District Court when a state court litigant "is denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof."

A recent Case on the 9th Circuit enforces Violation of Constitutional Right to "Live Together Without Governmental Interference"The ruling of the court was made by a 3-judge panel at the 9th Circuit. Judge Marsha S. Berzon was the leading concurring judge.The court stated: As this court has stated repeatedly, families have a "well-elaborated constitutional right to live together without governmental interference."

Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000); accord Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 789 (9th Cir. 2016) (en banc); Burke v. Cty. of Alameda, 586 F.3d 725, 731 (9th Cir. 2009); Rogers v. Cty. of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007); Mabe v. San Bernardino Cty., 237 F.3d 1101, 1107 (9th Cir. 2001); Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997).

Judge Marsha S. Berzon in her concurring opinion addressed the issue of traumatizing children by removing them from their home:"I concur in the per curiam opinion in full. I write separately to emphasize why it is essential that the courts scrupulously guard a child's constitutional right to remain at home absent a court order or true exigency.

Taking a child from his or her home, family, and community constitutes a separate trauma, in and of itself. Our cases so recognize, and so ordinarily permit that trauma to occur only after a court determination that the alternative is worse"

Pre-Emptive Constitutional Challenge to the Unlawful Discrimination of Separate Racial Classes via *Georgia v. Rachel*

Petitioner respectfully provides this Honorable Court notice and statement regarding *Georgia v. Rachel*, and/or any of its progeny, as to any undue consideration of that line within this action filed to vindicate some of the most basic civil and due process rights known and established amongst society, by stating and providing the following:

Basis of Constitutional Challenge

Petitioner's allegation of federal jurisdiction under 28 U.S.C. § 1443 appeared in the original Notice of Removal. Complete Diversity of Citizenship Exists Between Plaintiffs and All Defendants and the amount in controversy exceeds $75,000

Petitioner reasserts 28 U.S.C. § 1443 as lawful authority for this court to take jurisdiction of this case as stated in Petitioner's original Notice of Removal.

Federal statutes should say what they mean, and mean what they say. 28 U.S.C. § 1443 (2004) clearly states:

**§ 1443. Civil rights cases**

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

Petitioner relied upon numerous decisions of the Supreme Court of the United States which have explicitly and unambiguously classified Petitioner's rights at stake as "basic civil rights." [1]   It was inconceivable to Petitioner that there would be a skin color test (the very definition of racism) to exercise 28 U.S.C. § 1443 and protect his "basic civil rights" existing within his well established Liberty Interests. Such a race based litmus test is inconsistent with the color blind society which is the objective of equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

Either all citizens of the United States of America (*including foreign born mother* )have **the same and equal right** to exercise 28 U.S.C. § 1443 and protect their "basic civil rights", or the law fails for a contrary result that creates unequal classes of citizens in the exercise of "basic civil rights." [2]   In the latter case, the law is facially unconstitutional in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution, particularly in light of the color blind nature of civil rights actions, and of the history of the construction of the civil rights statutes and code sections applying, as to *all* United States citizens, "the same rights and opportunities that white people take for granted." *University of California Regents v. Bakke*, 438 U.S. 265, 287 (1978) (from the swing vote opinion of Mr. Justice Powell).

This court should not decline jurisdiction under *Georgia v. Rachel*, but afford Petitioner the equal protection of 28 U.S.C. § 1443 and retain its **inherent** jurisdiction over basic federal questions of Liberty Interests, so that his basic civil rights be accorded the same weight as the basic civil rights to be treated without regard to one's race. To do otherwise is to elevate the basic civil rights in racial equality above the basic civil rights in Liberty Interests.

Petitioner has no reasonable basis to expect that 28 U.S.C. § 1443 is not a perfect basis for removal to federal court, and that his rights to equal protection of the law should not be upheld fair and square, simply because his skin color is white but is discriminated against based on her national origin and language barriers, gender and social inequality.

Petitioner further moves for declaratory relief pursuant to FRCP 57 and 28 U.S.C. § 2201 to establish the right of all litigants to have the State of California comply with Federal law as well as State and Federal Constitutional Due Process requirements, in relation to basic due process components, such a fair and impartial tribunal trier of facts,  absent bias and prejudice or local interest groups conflict of interest.

Federal Question Jurisdiction exists pursuant to 28 U.S.C. § 1331 and § 1367(a), with proper removal under 28 U.S.C. § 1441(a) and the Federal Declaratory Relief Act codified in 28 U.S.C.

§ 2201. Jurisdiction exists under 28 U.S.C. § 1331 wherein the Federal Court may entertain the following basic Constitutional Questions which also implicate Declaratory Relief: Under the Supremacy Clause of the US Constitution, does the State Court have a duty to comply with Federal law? Is it a violation of the Fourteenth Amendment to the US Constitution, and the Federal Code sections which require Due Process, for a State Court to ignore and deny basic matters-of-law in fundamental fairness.

Upon Notice of Disqualification Of Trial Court was served on Jan 25, 2019 in Contra Costa and pursuant To 28 USC Secs. 144 and 455, And The Due Process Clauses, a denial of mandatory disqualification violated due process of the Petitioner of a fair and impartial tribunal.

Judicial disqualification is required under 28 U.S.C. § 455(a) "in any proceeding in which [the Court's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In addition, §455(b)(1) requires disqualification where a judge "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1.  Yet the Petioner was denied fundamental due process

In sum, the federal questions set forth above are not all of the grounds upon which Petitioner challenges the constitutionality of the statutes and processes under attack in this case; they are presented as a mere representative example of the fact that Petitioner has raised substantial federal questions to support federal court jurisdiction under 28 U.S.C. §§1331, 1441(b), and 1443, and, independently, federal court declaratory relief under FRCP 57 and 28 U.S.C. § 2201.

In view of the declaratory relief requested to address the substantial constitutional issues embodied in the federal questions in this case, removal from state court to federal court was proper, and jurisdiction in the federal court should be retained under 28 U.S.C. §§1331, 1441(b), 1443, and 2201.

## JURISDICTION AND OTHER GROUNDS FOR REMOVAL

As set forth more fully below, this Court has subject matter jurisdiction under 28 U.S.C. § 1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States and in which citizens or subjects of a foreign state are additional parties[.]" I. The Amount-In-Controversy Requirement is Satisfied. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) (quoting Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)). The Ninth Circuit employs the "either viewpoint" test to determine the value of the object of the litigation. Corral v. Select Portfolio Servicing, Inc., 878 F.3d 770, 775 (9th Cir. 2017). "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which

the judgment would directly produce." In re Ford Motor Co./Citibank, 264 F.3d 952, 959 (9th Cir. 2001).

Diversity of Citizenship Exists Between Plaintiffs and All Defendants.
Johnson v.Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens."); Marseilles Hydro Power, LLC v. Marseilles Land & Water Co., 299 F.3d 643, 652 (7th Cir. 2002) ("the relevant citizenship [of an LLC] for diversity purposes is that of the members, not of the company"); Handelsman v. Bedford Vill. Assocs., Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000) ("a limited liability company has the citizenship of its membership"); Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998); TPS Utilicom Servs., Inc. v. AT&T Corp., 223 F. Supp. 2d 1089, 1101 (C.D. Cal. 2002) ("A limited liability company … is treated like a partnership for the purpose of establishing citizenship under diversity jurisdiction.").
Title 28, U.S.C. § 1446(b)(2)(A) provides that all served defendants who properly may be joined in the removal notice must join. Here, none of the defendants have been served with the summons and complaint, thus, no joinders are required
In determining whether diversity of citizenship exists, only the named defendants are considered. See Newcombe v. Adolf Coors Co., 157 F.3d 686, 690-691 (9th Cir. 1998); see also Olive v. Gen. Nutrition Ctrs., Inc., No. 2:12-cv- 04297-ODW, 2012 WL 2006389, at *1 (C.D. Cal. June 5, 2012); Marsikyan v. Porsche Cars N. Am., Inc., No. CV 11-09411 SJO, 2012 WL 280585, at *2 (C.D. Cal. Jan. 30, 2012). III. The Other Prerequisites for Removal Are Satisfied. This Notice of Removal is timely filed. The relevant statute provides that "[e]ach defendant shall have 30 days after receipt of the initial pleading to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). Plaintiff filed the Complaint with the state court on March 6, 2018. Neither of the Defendants has been served with a copy of the Summons or Complaint, as of the date of the filing of this Notice of Removal. This action is properly removed to the United States District Court for the Central District of California, Western Division, which is "the district and division embracing the place where [the] action is pending." 28 U.S.C. § 1441(a); see also 28 U.S.C. § 84(c)(2) (listing the counties within the Western Division of the Central District of California). Title 28 U.S.C. § 1446(a), requires a copy of all process, pleadings, and orders served upon the removing defendant in the state court action (Case No. D160419 D1700739 and original action BF044642) 3to be included with this Notice of Removal.e following papers, and has attached them hereto as Exhibit 1, Summons and Complaints, On both courts and recent Contempt Summons that prompted this removal. (served less than 30 days ago on June 11th.)
Exhibit 2, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Petition for Relief, Verified Statement of Disqualification, the Two Summons or paternity, Contempt action and other relevant court papers, Pursuant to 28 U.S.C. § 1446(d), a Notice to Adverse Party of Removal to Federal Court, attached hereto as Exhibit 3, together with this Notice of Removal,

will be served upon counsel for Defendant and will be filed with the clerk of the Superior Court for the County of Contra Costa. By filing this Notice of Removal, Alexandra does not waive her right to seek to compel arbitration, or to object to jurisdiction over the person, or venue, and specifically reserves the right to assert any defenses and/or objections to which it may be qualified to assert. If any question arises as to the propriety of the removal of this action, Alexandra respectfully requests the opportunity to submit briefing and oral argument and to conduct discovery in support of its position that subject matter jurisdiction exists.

## TIMELINESS OF, AND GROUNDS FOR, REMOVAL

The relevant portion of 28 USC § 1446(b) that provides for this timely petition for removal is restated here:

"If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Timeliness of removal is shown by the attached Exhibit List, and its attached Exhibits.

Self-explanatory grounds for removal include: (1) willful pursuing of large sums of money in unwarranted fines and in knowing direct violation of expressly mandated state law, even further clarified by knowing prohibition by the high courts; all of which are (2) willful, fraudulent extortion in knowing violations of the Consumer Credit Protection Act and the Fair Debt Collection Act [see 15 USC § 1671, et seq., and 15 USC § 1692, et seq.]; and, even further, (3) a knowing lack of jurisdiction over the Petitioners herein, because they are not even parties to that state action.

This Notice of Removal is being filed within thirty (30) days of service of the last Contempt action on or around June 11, 2019 service on the first-served defendant. Thus, this Notice of Removal is timely filed under 28 U.S.C. §1446(b). Removal to this Court is proper as the Superior Court of the State of California, County of Los Angeles, where this action was originally filed, and is located within this district where the Petitioner resides.

## COMPLETE RECORD OF STATE PROCEEDINGS

The sheer volume of pleadings in the instant state court matter may well approximate in the range of two hundred (200) pages of various documents; This is primarily due to the constant civil rights violations that have been continually committed within that same ongoing matter.

Pursuant to the vested authority under 28 USC § 1447(b), this Court "may require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari issued to such State court."

Reproduction of the entire state court record within this Court should not be necessary, but if it is

deemed so necessary, Petitioners request this Court cause the same by writ of certiorari, or, alternatively, direct the Petitioners to provide what portions it deems most necessary therein.

INCORPORATION OF PRIOR PLEADINGS IN STATE COURT

Petitioners hereby incorporate by reference all pleadings, papers, and effects heretofore filed or otherwise lodged within the state proceedings the same as if fully set forth herein. (H.I).

SUGGESTED PRELIMINARY PROCEDURES IN THIS CAUSE

Petitioners suggest that, before this Court might consider any matter herein further, that this Court utilize its inherent authority, as well as the statutory authority vested under 28 USC § 1447(a), to issue one or more appropriate Order(s), directing that any one or more of the parties to the instant state court matter each show cause as to why this Court should or should not either: (1) issue any and all appropriate declaratory and/or injunctive relief; and/or, (2) retain the removal permanently, and further decide any or all other matters to the ends of justice therefore.

PROHIBITED REMOVALS OF STATE COURT CASES

Petitioners note for the Court's convenience that 28 USC § 1443(1) provides for the removal of any and all types of state court cases for violations of equal rights, with the sole exceptions being only the following four (4) types of circumstances, pursuant to 28 USC § 1445:

a civil action against a railroad or its receivers or trustees that arises under certain laws;

a civil action against a carrier or its receivers or trustees that arises under certain laws;

a civil action arising under the workmen's compensation laws; and,

a civil action arising under section 40302 of the Violence Against Women Act of 1994.

Therefore, civil rights violations against the Petitioners committed within the instant state court matter are perfectly proper grounds for removal to the United States District Courts.

OVERVIEW OF ONGOING CIVIL RIGHTS VIOLATIONS

Whether acting individually, or in either overt or covert concert, the Respondent-Plaintiff, counsel for the Respondent-Plaintiff, the judge of the state court proceedings, and the previous guardian ad litem of the Respondent-Ward, and along with other incidental individuals, have continually and consistently victimized the Petitioners by committing numerous violations against their equal civil rights, by intentional, knowing, and willful obstructions and deprivations of the same rights, throughout the entire course of the state proceedings since its original inception in 2012. Such transgressions against peace, dignity, and the law have included: knowing refusals to recuse and withdraw in the face of obvious conflicts-of-interest; abusing the power of a court of law to inflict false orders against persons and property; conspiring with the Respondent-Plaintiff to assist and commit various direct frauds upon the court; conspiring with the Respondent-Plaintiff to assist and commit forgery within certain pleadings filed in the state proceedings; numerous willful violations of fundamental equal rights, threatening and

intimidating the Petitioners during open court to no longer mention the Federal Constitution or to be subject to immediate "contempt" incarceration therefore, and an entire plethora of violations so long in listing that it is utterly abominable to even consider the thought.

SUMMARY AND PRAYER

Petitioners reiterate that their request for removal to this Court is not just about a supported and reasonable expectation of some future manifest deprivations of their various civil, constitutional, and equal rights within the same said state court, but also that such a deliberately unlawful pattern of the same is well established, threatened yet again, and must be stopped.

Without the immediate intervention, and the exercise of full jurisdiction and authority by this Honorable Court in retaining said lower state proceedings, at the very least with which to issue such appropriate declaratory and injunctive relief as to due process and equal civil rights, that the Petitioners will be otherwise subjected to manifestly egregious denial and inability to enforce in said state court one or more rights under the laws providing for the equal rights of citizens of the United States, and will be likewise unlawfully forced to suffer manifestly irreparable harm and injuries therein, without any further reasonable remedy at law.

WHEREFORE, the undersigned Petitioners, Alexandra B Georgescu now pray for retaining this removal of the instant state court matter under the jurisdiction of this United States District Court, also at a minimum for appropriate declaratory and injunctive relief, and/or to further decide supplementary matters, and for all other relief just and proper in the premises.
Respectfully submitted,

Alexandra B Georgscu aka Brenda George
In Pro Per
June 26, 2019
Los Angeles, CA


VERIFICATION

We hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that the above and foregoing representations are true and correct to the best of our knowledge, information, and belief.
Executed at Manhattan Beach, California day of June 26th, 2019.

Alexandra B Georgescu aka Brenda George

CERTIFICATE OF SERVICE

We hereby certify that, on this  day of June 26th, 2019, a true copy of the foregoing notice and petition for removal, by depositing the same in the United States mail, first class postage prepaid, has been duly served upon all parties of record in the lower state proceedings.

Alexandra B Georgescu
aka Brenda George
1150 Tennyson St, Ap 2
Manhattan Beach, Ca 90266


*Hodgson v. Minnesota*, 497 U.S. 417, 447 (1990) (The Court has frequently emphasized the importance of the family.  The rights to *conceive* and to raise one's children have been deemed `essential,'... `basic civil rights of man,' (citations omitted)); *Thornburgh v. American Coll. of Obst. & Gyn.*, 476 U.S. 747, 773 (1986) (Stevens, concurring) (`[T]he liberty... to direct the upbringing and education of children,'... are among `the basic civil rights of man.' (citations omitted); *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 463 (1985) ([O]ne of the "basic civil rights of man" - the right to marry and *procreate*. (citations omitted)); *Zablocki v. Redhail,* 434 U.S. 374, 379, 383, 384 (1978) (e that time... *Id. at 379* s one of the `basic civil rights of man,' fundamental to our very existence and survival"... *Id. at 383* "the foundation of the family and of society, without which there would be neither civilization nor progress"... (citations omitted) *Id. at 384*); *Weinberger v. Salfi*, 422 U.S. 749, 771 (1975) (This Court referred to the fact that the "rights to *conceive* and to raise one's children have been deemed `essential,'... `basic civil rights of man,' (citation omitted)); *Vlandis v. Kline*, 412 U.S. 441, 461 (1973) (Dissent of Mr. Chief Justice Burger, and Mr. Justice Rehnquist) ([T]he rights of *fatherhood* and family were regarded as "`essential'" and "`basic civil rights of man'"); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (The rights to *conceive* and to raise one's children have been deemed "essential,"... "basic civil rights of man,". *Loving v. Virginia*, 388 U.S. 1, 7 (1967) (State's purposes were "to *preserve the racial integrity* of its citizens," and to prevent "the *corruption of blood*"); *Griswold v. Connecticut*, 381 U.S. 479, 503 (196("The right to establish a home and bring up children,"... and "the liberty . . . to direct the upbringing and education of children,"... and that these are among "the basic civil rights of ma For an excellent, thorough, and very enlightening review of this entire subject please read *University of California Regents v. Bakke*, 438 U.S. 265 (1978).  The entire case is very illuminating from the standpoint that all of the Justices espoused views on subject of equality under the law that go far beyond the school admissions context.

Alexandra Georgescu
1150 Tennyson St ap 2
Manhattan Beach, Ca 90266
IN PRO PER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| Petitioner: Alexandra B Georgescu vs. | Case No.: D17-00739 |
| Respondent: Paul N. Clemmons | RE: NOTICE OF FILING NOTICE OF REMOVAL TO DISTRICT COURT |
| | **DEPT:  32  DEP: 19 and DEPT: 1** |

To the Clerk of the Court, The Presiding Judges, The Judicial Council and other interested parties and their attorneys of record:

Notice of Filing Notice of Removal to District Court
Please take Notice that, on June 27th of 2019 filled a Notice of Removal, pursuant to 28 USC 1332, 1441 and 1446 18 USC 241 and 242, 18 USC 1512 and 1513, etc removing the above case and actions D1700739 and D1604093 from the Contra Costa County Superior Court to the United States District Court of California for the Central District, Western Division. A true and correct copy of the Notice of Removal is attached hereto as Exhibit 1.

Please take further Notice that, upon the filling of the Notice of Removal with the Clerk of the United States District Court of California, Central District, Western Division.and filling copies thereof with the Clerk of the Superior Court of Contra Costa, the undersigned, Alexandra B Georgescu has effected Removal and the Contra Costa Superior Court shall proceed no further in this action unless the case is remanded pursuant to 28 USC 1446 d).

Respectfully submitted,

Alexandra B Georgescu
In Pro Per
June 26th 2019

Manhattan Beach, California

**DECLARATION AND MEMORANDUM OF POINT OF AUTHORITIES IN SUPPORT OF REQUEST TO STRIKE CONTEMPT ACTION AND TRANSFER CASE TO PROPER VENUE IN LOS ANGELES**

I Alexandra B Georgescu declare under the penalty of perjury;

I do not submit to Contra Costa Jurisdiction, in lack of Personal or Subject Matter Jurisdiction or legal authority, an inconvenient, improper forum and unfair place of trial, precluded by Resjudicata, Judicial Estoppel doctrine and UCCJEA Cal Fam Code 3400 submitted by the father in December 22, 2016 and obtain by Unclean Hands.

Secondly, to my knowledge the alleged orders are void by Los Angeles Court on March 15, 2019 and voidable by prior disqualification of judge Hiramoto on Jan 25th ,2019. The string of punitive orders are retaliations only as they are unsupported by evidence or standard burden of proof. The alleged actions stemmed out of an expired, not noticed or properly served, unlawful infringements on free speech rights in an attempt to silence me and persecute me for pursuing my lawful right of relief and interfere with my only extended custodial time from June 13 -July 14

Furthermore, I didn't not intend to violate the court order, I am not the said party on this action, A false inadmissible email exchange allegation of parties not in front of the court, my mother an a Deloitte employee does not properly set a course of action or evidence of established harm or crime. Therefore I move to strike the emails as false and unsubstantiated and improperly distributed in violation of evidence code or statutory standards of proof.

I also request Declaratory Relief from the father's malicious accusation with the purpose of interfering with my already limited parental time and Sanctions be imposed for his frivolous actions and us of contempt on unsubstantiated and false evidence,or unlawfully submitted in breach of confidentiality. I move to strike the said Declarations and emails from evidence as inadmissible.

The petitioner and this matter was not properly brought in front of Contra Costa court also in obvious appearance of bias and prejudice and conflict of interest of the opposing party with the local court's authors, in retaliation after disqualification for cause was served with evidence of the collusion. The burden of proof by clear and convincing evidence and the requirements for contempt cannot be meet as:

- I didn't have the ability to comply with the court order
- I didn't know about the court order at the time as set violation
- I was falsely accused of disobeying the court
- I do not understand the restrictions on my speech or my mother's rights
- I had no intent to harm anybody and I didnt know about the alleged email
- I do not believe there is a lawful basis, unambiguous orders or legal authority to pursue such actions

In contrast, the father Purposely setting it up the Contempt punitive action on my Easter, and now on my summer custodial time, clearly intends to harm me and his unsubstantiated declarations must be meet with credibility findings in light of his repeated breach of contract from LA Judgment and previous entered stipulations and agreements. Furthermore he fails to bring a clear and convincing evidence or to meet the burden of proof beyond a reasonable doubt for such a detrimental action. In contrast, he is  blocking my access to the child and restricts my limited custody and attempts to interfere and intimidate me in contradiction with the orders and findings of Judge Hiramoto that "he is more likely" to encourage visitations.

After a Verified Statement of Disqualification was served on Judge Hiramoto, on the same day of Jan 25th a permanent DV order was issued by the same judge on the same allegation of a welfare call to police on Jan 11, 2019, the alleged call was used (lacking a proof that I was in fact a party of this action), to render the DV order on Jan 25th and the same welfare call of jan 11 was used to bring a contempt for an alleged violation of DV order before it was even issued on Jan 25h. The contentious welfare call to police that deedem the DV order was not evident in front of the court absent a report, and an actual welfare was not performed as father stated officer didn't come inside the house to check on the child. What is the basis of the DV order?

*"We must not pretend that the countless people who are routinely targeted by police" or government authorities are "isolated." "They are the canaries in the coal mine whose deaths, civil and literal, warn us that no one can breathe in this atmosphere. They are the ones who recognize that unlawful police stops" or unwarranted interference with our rights "corrode all our civil liberties and threaten all our lives. Until their voices matter too, our justice system will continue to be anything but." Justice Sonia Sotomayor*

*"By legitimizing the conduct that produces this double consciousness, this case tells everyone, white and black, guilty and innocent, that an officer can verify your legal status at any time" or deny due process, seize your child or even jail you. "It says that your body is subject to invasion while courts excuse the violation of your rights. It implies that you are not a citizen of a democracy but the subject of a carceral state, just waiting to be cataloged" and stereotyped.*

Paraphrasing Justice Sonia Sotomayor, joined in part by Justice Ruth Bader Ginsburg, this case is to a great extend similar, as it reminds us that abuse of powers by government authors, here, the Judge of the family court, is the growing cancer of our society and it undermines not only our freedoms but mostly our children and our future.

Seizing children unwarily from fit parents, interfering with constitutionally protected parental rights, all while denying due process of the law, is the new form of autocracy of the judge of the family court, at least in Judges Hiramoto court, Alongside, the targeted parent is gagged, held in contempt for talking to the police and criminalized for attempting defense, deprived of rights and freedoms without cause or substantial evidence standard but only for willful and prejudicial errors of law or facts.

Asserting and repeating a false statement of a "illegal self help move to LA in Aug 2016" and that the case went "back to Contra Costa" is simply false no matter how many times is

pronounced and how many writs appeals or motions are denied. A paternity custody case in Contra Costa did not exist until a second summons was filed in dec 22, 2016. A Case Summary of LA from May 2012 to two CC separate actions asserting in Dec 2016 logged under different files still won't change the same matter of fact that the initial and continuous jurisdiction was and is LA and the stipulated orders in Aug 2016 and the Conciliation Custody Agreement signed by the father was the only order in aug 2016 at the time of the asserted "the move" and the language stated the child lives in LA with the mother and both parents will travel. Father to Los Angeles and Mother to No Cal to facilitate visitation, Still the repeated false statement of judge Hiramoto of an alleged "unauthorized move to LA" is the base of the custody reversal in contradictory actions.

The unaccounted spin of truth in this partisan and secretive tribe of interested parts under "confidential" excuse, amounts for cruel and unusual punishments for the targets and allows the judge to operate above the law. Even facing overwhelming evidence of disqualification, judge Hiramoto can simply deny matters of fact of the case or transcripts, forget or "empathically "deny her own words or prior orders, retaliating and reappoint herself while gagging and holding in contempt the opposition at the same time.

In Estes v. Texas, 381 US 532 (1965), the Supreme Court wrote:" Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth which is the sine qua non of a fair trial." Id. at 540;

The lack of judicial transparency in quest of unlimited powers and personal gain by paying favors to special interest groups results in profiting and glorifying white privileged, patriarch culture and oppressing the foreign-born targets. Redress is very limited and mostly out of reach for the common people, left alone a foreign born parent with no extensive knowledge of the law. The law is even cited by the judge, in her order striking disqualification,  as an excuse for perhaps willful "errors that are almost never reversible ", as if the substance of justice and search for truth is only a pretext in disguise of technicalities as if an unlimited protection of the law serves the tricksters not their victims.

While the unchecked lack of judicial temperament becomes a public menace, acting without legal authority in lack of jurisdiction and beyond the letter of the law makes the judge's orders void or voidable. The orders that are not within the Constitutional Dictate therefore compliance is not mandated, and contempt cannot be cited. Furthermore the gag orders to "not discuss the case with any other person" is not humanly possible. Being a mother is talking about your child, worrying, asking for help to the law enforcement officers, a public entity to serve and protect the public not a tool of coercion of a government official. To spin a call to police as an excuse to seize a child from a fit but worried parent and further to hold them in contempt and issue a five years DV protective order for the father citing only the mother's call to police about the child as reason is unfathomably undemocratic.

Contempt is a willful disobedience of an order. But what order? What alleged action I willfully disregard? I didn't go to social media or press or denigrated the father. The unconstitutional and blanket gag order " don't discuss the case with any other person" of Nov 22, 2018 was expired by January 11, 2019. I was never served with any reissue of an order. I stated and filled the objections to that ex-parte order. Was it another one issued after all? Was I warned that a welfare

call to the police is in fact unlawful? Is it in fact a call to police unlawful? What law or precedent was cited? Was an order in effect that I had specific notice " Do Not call the police" under any circumstances not even about the safety of my child as I will suffer great consequences and be held in contempt and doubled jeopardized with a five years DV restraining order protecting the father even if he was not the subject of the alleged call.

How can you get a permanent DV order and be held in contempt for the same action occurred ahead of the order you were supposedly in contempt for before it was even issued. A welfare call to police about the child is not a crime an it allegedly happened on Jan 11( although we have no evidence of it) however for this action a Dv order was issued on Do Not Jan 25, the same day right after Judge Hiramoto was served with a 170.3 verified statement of disqualification. And short after that in Jan 4th i believe a Contempt was set forth for the same supposed violation of Jan 11, ahead of the order of Jan 25th of the contempted basis. A standing gag order didn't exist at the time the DV was issued on Jan 25th long expired after Nov 22, 2018 ex parte without notice temporary order post trial of an unconstitutional blanket gag order.?"not to discuss the case with any other person". It appears a predatory culture in concealing wrongdoings and unlawful orders.

Was there a police report or witness statement entered in evidence in my absence? I am not aware of any evidence but a hearsay statement by the father to what a police officer allegedly admitted to him that it was me that made the welfare call about the child. What officer and where is the evidence of what the officer allegedly told the father? How about the confrontation clause and right to cross examination? How was I identified as the caller in this alleged crime that I am already paying for so drastically? In fact long after the order was issued on Jan 25th a request of the police report was issued on march and one was not secured as there is none. So what evidence exists to justify the retaliatory permanent DV order after disqualification. An order after 170.3 disqualification is void not just voidable to preserve the integrity of the administration of Justice but not in Judge Hiramoto court, in fact she strike the disqualification 9 days after she was served almost twice the time pass the deadline of five days. Technically she is disqualified and her string of DV, two contempts and Vexatious Litigant only shows her bias and self interest in obstructing a review on appeal of her unwarranted orders.

To further deepen the unreasonableness of her orders, she charged me with Vexatious Litigant for 5 actions in 3 years only in defense as the opposing party was the moving part of some 45 actions during this time in Contra Costa alone since they started a Res Judicata with a Second Summons of Paternity inDec 22, 2016. After were told the LA judgement could not be modified as father signed a stipulation a waiver of the right to a new trial and all was entered in Judgement in LA where he could just set up a mediation to step up his visitations. Yet he never did that instead engaged in a legal abuse trickery and succeeded to eliminate me from my son's life with Judge Hiramoto's help and mostly on ex parte without evidence or witnesses but on declarations and state of mind of the same father denied paternity medical help stopped child support on his own despite orders and never came close to his allowed visitations. Clearly this is not about the child or his best interest but about a personal bis of judge Hiramoto.

A fair and impartial trial, a fundamental of due process cannot be held in Contra Costa in the sphere of influence of just vindictiveness and baseless of the laws and repeated false statements. A judges discretion is not unlimited, a decision is bound to the statutory laws and policies and a

child right to his natural mother cannot be reduced to two times per year with no path to regain it as punitive action absent meeting the burden of proof.

I March 15,2019 I was in court in LA attempting to prevent a further misscariage of justice by Judge Hiramoto and presented my case and evidence against the capricious DV and contempt orders of Contra Costa and that is why I was not in court, At that time LA, my county of jurisdiction where I have access to justice unlike Contra Costa DISMISSED ALL DV ORDERS

Thereafter Judge's Hiramoto DV order was no longer valid, dismissed by LA court and voided by the Disqualification in Contra Costa despite her untimely response. A contempt could not be grounded on a Dismissed Order of a Disqualified Judge steamed out of an unlawful gag order unserved and unnoticed.

As for the May 10th once again I was not personally served and I did NOT waive my right to personal service as the father waived his right to a new trail yet prevailed in this unlawful action.

As for the Second Contempt of April 24 set for June 28th I was stalked, harassed and served at my home in LA in another attempt to intimidate and coerce me in giving up my appeals and right to remedy. Yet I am not a party to this action, Respondent did not meet the burden of proof by clear and convincing evidence and did not state a course of action.

The only intend is malicious Interference with my custodial time in this earned summer vacation the longest time allowed with my child for the past year since he was removed from LA and my only custody since birth on ex parte case status conference for the father's"state of mind " absent a witness a single evidence of harm or exigent need as the law provides. Another Vicious action of Vexatious Litigant is also set to interfere with my custodial rights and time in LA with my son 500 miles from Martinez where I can't even afford to fly or travel anymore. How could I afford such an excessive fine when I lost my income and more importantly for what?

A copy and pasted false evidence in the form of a so called email from my mother but not addressed to the alleged recipient Shari Coats or an actual email address or even an acknowledgement of the content. The email is an internal partner talk about the private business of the employment place improperly distributed by the respondent in breach of confidentiality and ethics practice and as my mother testifies was not sent to Shari Coats and perhaps hacked from her computer to build more sand castles in this predatory practice. My mother testifies it was indeed sent from her in Romania a far pace from where I am in LA and an IP address could easily clarify this. The inference of what my mother would and would not do or what I could or could not have to do with is simply prodonderous. The father's word is not very sustainable in the eyes of the court or the ones they read the court documents submitted and signed by himself at different times and his own contradictions or breach of contract or stipulations at a later time.. For all this Petitioner moves to strike the Father's declaration in its entirety as unreliable source and part false evidence Petitioner is vehemently objecting and presenting sworn affidavit of my mother and asking for declaratory relief under….

Not a single burden of proof is meet of the email sent to his employer or that it was the content attested when evidence is to the contrary or that it constitutes harassment or a crime from my poor mother equally distress and separated from me and her grandchild unjustly for years. What order she violated by pleading for help or stating the truth. How could an action from abroad

from a competent individual a profesor doctor directly affected by this predatory actions on her offspring could be attributed to me and render such a drastic unreasonable excessive punishment?

Presiding Judge Barbara Jones of the First Circuit Division 5 where my appeals are in fact recently asserted a stiff punishment of 87K for a father that misused a contempt action to gain an unfair advantage and intimidate the other party.

For this reason I am asking for this case to be immediately transferred to Los Angeles for a fair custody determination as I am the Petitioner in my Home and the child's since birth and six months prior to the commencement of the second action in Contra Costa in dec 22, 2016, the basis of the current orders. In lack of Subject Matter Jurisdiction and as an Inconvenient Forum and Unfair place of Trial Contra Costa must transfer the case back to the proper, initial and continuous jurisdiction of my home in Los Angeles to serve the ends of Justice and diminish the appearance of bias and prejudice in the service of special interest groups not the interest of Justice.

I was NOT served to this DV order but received from the child Support with the date stamped after judge Hiramoto received my Verified Statement of Disqualification, January 25th 2019. As apparent as my confusion and shock is about all this harm brought upon me for no fault of my own as a parent, a fit parent that presumably acts in the best interest of the child therefore no interference or punishments from a government actor shall interfere by law.

Yet in Contra Costa in lack of jurisdiction or due process of law with about 17 ex parte motions against me and orders based on ex parte information not before the court or according to the evidence code, made life alerting imbalanced rulings in favor of one side only, the local powerful tribe.

By not affording me right to legal representation no factual basis or legal grounds to justify the prejudicial findings, no proper request for orders or authority to overrule a standing stipulated judgement of Los Angeles entered in 2012 A second Summons of paternity and a UCCJA stating and signed by the father that the child resided in LA with the mother at least six months prior to the commencement of the second paternity action. In lack of Personal or Subject Matter Jurisdiction Contra Costa County proceeded in parallel piecemeal litigation denying the dismissal based on Res Judicata and refusing to allow Los Angeles to retain continuous jurisdiction after an improper a premature moved was secured by unclean hands and contradictory statements.

For instance in Sep 2, 2016 the opposing party and his attorney testified under oath that I "fabricated the evidences that I live in LA" that it is impossible to have a fair trial when everybody lives in Contra Costa" where supposedly witnesses are, yet failed to bring one witness or assert a cause of action and signed another statement filled in Contra Costa with the Summons and RFO stating and signing the UCCJA that the child resided in LA since August 2016. So a month later in Sep 2, 2016 he knew the child resided in LA yet he testified to the contrary in front of Judge Moor.

My credibility and who I was perceived or painted to be was the play not one factual finding. But the law punishes people or sets a cause of action based on what people do not who they are.

Perhaps the stress, accent and language barriers, falsely accused and unrepresented reduced me to a stereotype. Yet this stereotype and slanderous repetitions absent any facts by the opposing party created this litigation chaos and a full turned over of an already adjudicated matter signed and stipulated in 2012 by the father himself granting full custody to the mother with visitations to the father about two times per month, A step up plan was orders and stipulated at the after request and by setting an appointment with the mediation. He never did that.

A Judicial Estoppel should have applied to a second summons of paternity of 2016 in Contra Costa in lack of jurisdiction or authority to reverse binding agreement previously entered in LA. Yet Contra Costa Sanctioned me 10,000 K for not submitting to jurisdiction and asserting in the first hearing "this is a piecemeal litigation"

This very piece meal RFO and Summons is the basis of the current order signed by judge Hiramoto in July 2018 was entered in Dec 23, 2016 and a RFO for meaningful visitations and evaluation did not authorized Judge Hiramoto to fully remove my legal custody and my physical custody with the child I raised on my own since birth and denying me the of the "frequent and continuous contact" mandated by California State policy. I gone four months without seeing my child and weeks without talking or having my calls answered. My child is in the care of a teenager nanny mostly full time as father travels for weeks at times. Yet I am supposed to pay for the nanny when I am fit parent unlawfully prevented from caring from my child and have contact

My child was removed with no cause or harm with two times per year allowance to see him from my full custody since birth I am legally abused slander with Child abduction order several DV orders based on a gag order and a five years permanent restraining order with as collection of nannie cost of 2000 per month to pay the millionaire father and outstanding bills of 100K for medical cost of pregnancy.

I am not able to appear in Contra Costa  inconvenient forum and I am exercising my 5th Amendment right not to testify against myself and I am invoking my right to fair and impartial tribunal, fair trier of fact and trier of law. I am asking protection under the due process clause of the 5th and 14th Amendments of the Constitution,  Procedural and Substantiative Due Process, Bill of Rights and prohibition against vague laws in administration of Justice. I am also seeking protection under the 8th Amendment from cruel and unusual punishment under Substantiative Due Process Standard The individual rights protection from government interference under Strict Scrutiny Standard of the 14th Amendment Due Process Clause and Equal Protection" as safeguard from arbitrary denial of life liberty, property, and deprivation of parental rights, confrontation right, right to counsel and presumption of innocence by government officials.

While the constitution does a lot of things under Due Process Clause it dose not protect a man's reputation. There is no "Due Reputation Clause" or enforcement of such coercive powers in the court system. Yet there is s First Amendment protection of Free Speech.

The contempt motion should be denied for two reasons:
1) This Court does not have jurisdiction over Plaintiffs' Motion
2) Defendants would not be in contempt even if the
order were in effect.

A De Novo standard of review is required by which to judge the constitutionality of infringements upon a parents' rights, life liberties and freedom of speech.

1. The issue tendered in his petition is of widespread interest or presents a significant and novel constitutional issue;

2. The trial court's order deprived petitioner of an opportunity to present a substantial portion of his cause of action (Brandt v. Superior Court (Standard Insurance Company) (1985) 37 Cal.3d 813, 817);

3. Conflicting trial court interpretations of the law require a resolution of the conflict (Greyhound Corp v. Superior Court (Clay) (1961) 56 Cal.2d 355, 378;

4. The trial court's order is both clearly erroneous as a matter of law and substantially prejudices petitioner's case (Babb v. Superior Court (Huntington) (1971) 3 Cal.3d 841, 851); or

5. The intervention of an appellate court may be required to consider instances of a grave nature or of significant legal impact, or to review questions of first impression and general importance to the bench and bar where general guidelines can be laid down for future cases. (Anderson v. Superior Court (1989) 213 Cal. App.3d 1321, 1328;City of Garden Grove v. Superior Court (Kha) (2007) 157 Cal. App.4th 355, 370.)

## PROCEDURAL HISTORY

This case was originally brought in. LA in 2012 stipulated judgment of paternity was was entered with waivers and stipulation signed.

## ARGUMENT AND CITATION OF AUTHORITY

### A. THE COURT ENTERED A PIECE MEAL RESJUDICATA LITIGATION AND IS THUS WITHOUT JURISDICTION TO RULE ON RESPONDENT' MOTION FOR CONTEMPT

This Court no longer has jurisdiction of the case following disqualification ,.../

entered Respondent attempts to retaliate and parallel actions against previous consent should not be tolerated. Judicial Estoppel Resjudicata, unclean hands and contradictory statements in different courts this argument is without merit. Subsequent to the opening of a new case all orders are void or voidable. Since this "new case" was filed after the Stipulated judgement in LA the CC Court failed to make the requisite finding for prospective injunctive relief it cannot be said that there is any order currently in effect. The Court is thus, without jurisdiction to hold Petitioner in contempt. Lastly It is well established that the courts are without authority to substitute their judgment to a fit parent that adequately cares for the child" left alone against the two parents previous and standing consent entered as a judgment in LA.

Judicial Estoppel: The Refurbishing of a Judicial Shield

Mark J Plumer

*Geo. Wash. L. Rev. 55, 409, 1986*

The Supreme Court has long recognized that to dispense justice effectively courts must be able to uncover the truth. 'Yet, in at least one situation a court's search for truth is misdirected: when a party to a trial adopts a factual position, triumphs on that basis, and then adopts a contrary position in a second adjudication to benefit again. This Note examines the options available to a court to fend off this abuse of its processes2 on the assumption that dual recoveries on inconsistent bases are unjust. 3 When confronted by conduct of this sort, courts are not wholly paralyzed. They may rely upon res judicata, 4 collateral estoppel,

1. In Estes v. Texas, 381 US 532 (1965), the Supreme Court wrote:" Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth which is the sine qua non of a fair trial." Id. at 540; see also Nix v. Williams, 467 US 431,445, 447-450 (1984)(noting that ours is a legal system exalting" the search for truth in the administration of justice"); Chandler v. Florida, 449 US 560, 573 n. 8 (1981)(characterizing the trial in Estes as preventing a" sober search for the truth"). 2. In Seattle Times Co. v. Rhinehart, 467 US 20 (1984), the Supreme Court recognized the right of courts to protect the integrity of their internal processes. In approving a state court's right to issue a protective order to prevent an illegitimate use of discovery, the Court stated:"'[W] e have no question as to the court's jurisdiction to do this under the inherent" equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices."'Id. at 35 (quoting International Prods.

The equitable doctrine of judicial estoppel can be invoked to prevent a party from taking a position contrary to one the party advanced in prior litigation. The purpose of the doctrine has been stated in multiple, but substantially similar, forms: to "protect the integrity of the judicial process," *Jackson v. County of Los Angeles*; to "protect against a litigant playing fast and loose with the courts"; and to implement "general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings," *Prilliman v. United Air Lines, Inc.*
While the doctrine of judicial estoppel has long been recognized in California, as of 1998. the courts had recited certain observations about the doctrine, such as that "one to whom two inconsistent courses of action are open and who elects to pursue one of them is afterwards precluded from pursuing the other," that the "seemingly conflicting positions must be clearly inconsistent so that the one necessarily excludes the other," and that the doctrine "cannot be invoked where the position first assumed was taken as a result of ignorance or mistake."

The uncertainty disappeared in 1998 with the publication of *Jackson v. County of Los Angeles* by the Second District Court of Appeal, which held that the doctrine of judicial estoppel "should apply" whenever:
(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (*i.e.*, the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.
This precise recitation of the elements of judicial estoppel was later adopted by another court of appeal and ultimately by the California Supreme Court in two separate decisions.

California courts of appeal have ruled that the following acts constitute adoption or acceptance: a stipulation entered into by a party at trial, *see City of Lodi v. Randtron*, 118 Cal. App. 4th 337, 351 n.18 (2004), a stipulation signed by a party

With Contra Costa actions Judge, reveal a pattern and practice of multiple violations of the canons of judicial ethics. Inter alia, this complaint reveals that Judge has engaged in the following reckless and wanton misconduct: violations of CA State judicial canons.,,, Other criminal misconduct under the penal code and under federal criminal and civil USC statutes include, but are not limited to illegal, unlawful destructive actions and unfit behavior in bullying of targeted litigants, pro se litigants, unlawful and punitive orders for child custody and payment of child support, with the threat of incarceration for speaking with law enforcement or regulatory entities about the unlawful removal of a child from a fit parent; ex parte communications with her                                          favored                                          attorneys.
The aim of this complaint is to prevent the recurrence of actions described herein and to take any and all necessary enforcement actions under your office and to also direct and forward this complaint as required to civil and criminal regulatory oversight against Judge Hiramoto

The Due Process Clause of the Fourteenth Amendment protects certain fundamental parental rights, including the right of parents to make decisions concerning the care, custody, and control of their children, to direct the upbringing and education of their children, the right to make medical decisions on behalf of their children, and, in conjunction with the First Amendment, to guide the religious future and education of their children.

Courts review governmental infringements on fundamental rights protected by the Due Process Clause under strict scrutiny, requiring that the statute serve a compelling state interest and be narrowly tailored to achieve that interest.

In addressing child custody disputes between parents or in instances of abuse and neglect, .. of a child, the Legislature has established the standard by which courts must resolve those disputes. Pursuant to section 153.002 of the Family Code, the best interests of the child shall always be the primary consideration of the court in determining the issues of co and possession of and access to the child.

Due Process Clause requires a heightened evidentiary standard before infringing parental rights. "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer, 455 U.S. 745, 747-48 (1982)

A court may not infringe on constitutionally protected parental rights absent clear and convincing evidence of the allegations supporting the findings. Court must instead grant fundamental parental rights expansive protection under the Due Process Clause.

In evaluating parent-child relationships before making decisions about access to the child, courts presume "that fit parents act in the best interests of their children" and refrain from imposing their own judgments in lieu of a fit parent's decision regarding what is in the best interest of the child. Troxel, 530 U.S. at 68. "The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." Parham, 442 U.S. at 602. "More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children." Id. Due to this presumption, the State may not "infringe on the fundamental rights of parents to make child rearing decisions simply because a state judge believes a 'better decision' could be made." In re Derzapf, 219 S.W.3d 327,333 (Tex. 2007) (quoting Troxel, 530 U.S. at 72-73). So long as a parent is fit, "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Troxel, 530 U.S. at 68-69; see also In re Scheller, 325 S.W.3d 640,642 (Tex. 2010).

Nevertheless, both federal and state courts generally apply strict scrutiny if a state statute infringes upon a fundamental liberty right protected under the Due Process Clause of the Fourteenth Amendment. See, e.g., Reno, 507 U.S. at 302 (explaining that the Due Process Clause "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"); Holley v. Adams, 544 S.W.2d 367,370 (Tex. 1976) (recognizing that because the case involved the right of the parent to surround the child with proper influences, the case was "strictly
scrutinized"). "Strict scrutiny" requires the "Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Reed v. Town of Gilbert, 135
S. Ct. 2218, 2231 (2015); see also Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (recognizing that the Due Process Clause forbids the government from infringing upon a fundamental liberty interest "unless the infringement is narrowly tailored to serve a compelling state interest").

Consistent with this applicable standard of review, courts and this office recognize that "state statutes that infringe upon a parent's right to control the care and custody of his or her children are subject to strict scrutiny." Tex. Att'y Gen. Op. No. GA-0260 (2004) at 5; see also Recognizing that the statute implicated the fundamental liberty interest of parents in the care, custody, and control of their children, the court underscored the appropriate standard of review: "Because a fundamental right is implicated here, we apply strict scrutiny and will uphold the statute if it is narrowly tailored to serve a compelling government interest." Id. at 254.

The U.S. Supreme Court's 2000 opinion Troxel v. Granville contains the most recent expansive discussion of fundamental parental rights. 530 U.S. at 63. In Troxel, the Court held unconstitutional a Washington statute that allowed any person to petition for visitation rights at any time if it was in the best interests of the children. Id. Overturning the decision to grant a grandparent access to a child over the objection of the parent, the Court emphasized that if a

parent

"adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State

to inject itself into the private realm of the family to further question the ability of that parent to

## I. THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT PROTECTS FUNDAMENTAL PARENTAL RIGHTS.

Courts have long held that "the natural right existing between parents and their children is of constitutional dimensions." In re Pensom, 126 S.W.3d 251, 254 (Tex. App.-San Antonio 2003, no pet.); Wiley v. Sprat/an, 543 S.W.2d 349, 352 (Tex. 1976). As the U.S. Supreme Court recognized almost a century ag_o, "[t]he child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and pr~pare him for additional obligations." Pierce v. Soc '.Y o_fSisters, 268 U.S. 510, 535 ,(1925). Consistent                                                                                        with this recognition, the Court has held that the interest parents possess with regard to their children is

a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

Troxel v. Granville, 530 U.S. 57, 65 (200'0).

The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV,§ 1. In addition to guaranteeing

fair process, the Court has held that this Clause includes a substantive component that forbids the government from infringing upon "certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-02 (1993). The Court has long held that among the fundamental rights protected by the Due Process Clause are certain fundamental parental rights.

Troxel, 530 U.S. at 65; Pierce, 268 U.S. at 534-35; Meyer v. Nebraska, 262 U.S. 390, 399 (1923) ("liberty" includes the right of the individual to "establish a home and bring up children").

## A. DUE PROCESS PROTECTS THE RIGHT OF PARENTS TO MAKE DECISIONS REGARDING THE CARE, CUSTODY, AND CONTROL OF THEIR CHILDREN.

The Due Process Clause "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel, 530 U.S. at 66. In Troxel, the Court held unconstitutional a state statute authorizing a court to grant visitation rights to any person, even over the objection of a fit parent. Id. at 72-73. Noting that the statute placed the best-interest-of-the-child determination solely in the hands of the judge, the Court concluded that it unconstitutionally infringed on the right of parents to make decisions about the care, custody, and control of their children. Id.; see also Prince v. Massachusetts, 321 U.S. 158, 166 (1944) ("It

is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.").

## B. DUE PROCESS PROTECTS THE RIGHT OF PARENTS TO DIRECT THE UPBRINGING AND EDUCATION OF THEIR CHILDREN.

In conjunction with the right to make decisions about the care, custody, and control of their children, the Due Process Clause guarantees the right of "parents to make judgments about children's need for medical care and treatment. Id. at 603.

## D. DUE PROCESS, COUPLED WITH THE FIRST AMENDMENT, PROTECTS THE RIGHT OF PARENTS TO GUIDE THE RELIGIOUS TRAINING AND EDUCATION OF THEIR CHILDREN.

In conjunction with the First Amendment, the Due Process Clause protects the right of parents "to guide the religious future and education of their children." Wisconsin v. Yoder, 406 U.S. 205, 232 (1972). Wisconsin v. Yoder addressed a challenge to a compulsory education law, which required school attendance until age 16, by Amish parents who objected to formal education

beyond the eighth grade. Id. at 207-11. Recognizing that the parents' objections were firmly grounded in their religious beliefs, and that compulsory high school education could significantly alter the religious future of their children, the Court held that the First and Fourteenth Amendments

"prevent the State from compelling respondents to cause their children to attend formal high school

to age 16." Id at 234. In doing so, the Court emphasized that the "primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Id. at 232. make the best decisions concerning the rearing of that parent's children."

## CONTEMPT:

In order for Respondent to show contempt they must demonstrate that:

1) Defendants violated the Court Order; 2) the Court order is valid and lawful; 3) the order is clear, definite and unambiguous; and 4) the respondent has the ability to comply with the order. McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000).

The conditions shall extend no further than necessary to correct the violation of the right of a particular. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The Court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

In this case that charges are based on nothing more than rumor" Indeed, it is constitutional error for a Court to order such relief in a litigated case. Lewis v. Casey, 116 S.Ct. 2174, 2184 n.7 (1996);see also Wylie v. Rizzo, 564 F.2d 126, 149 (3rd Cir. 1997); see, e.g., Columbus Bd. of Educ. v. Penick, 439 U.S. 1348, 1353 (1978)(holding that "Courts have no power to presume and remediate harm that has not been established"). The rights to a remedy for constitutional violations are mandated. The Supreme Court has cautioned that injunctions are not to stay in place in perpetuity. Board of Education v. Dowell, 498 U.S. 237, 248 (1991).

## B. RESPONDENT HAVE NOT SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT PETITIONER IS IN VIOLATION OF A SPECIFIC THE ORDER

Assuming that the Court finds the gag order is still in effect, the Plaintiffs bear the burden of proving by clear and convincing evidence that the defendants are in violation of the said order willfully Reynolds v. McInnes, 338 F.3d 1201, 1211 (11th Cir. 2003).

Contempt may serve two purposes; it can be either coercive, which is intended to make a recalcitrant party comply, or compensatory See Sizzler Family Steakhouses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529 (11th Cir. 1986). A person who attempts with reasonable diligence to comply with court order should not be held in contempt. Newman v. Graddick, 740 F.2d 1513 (11th Cir 1984). In order to avoid contempt, the contemner may be excused from non-compliance because of an inability to comply with the terms of the order. Inability as a defense to contempt does not mean that compliance with court order must be totally impossible, but, rather, the inability that will absolve a party from being held in contempt requires only that non-complying party has made in good faith all reasonable efforts to comply with the terms of the court order. Chairs v. Burgess, 143 F.3d 1432 (11th Cir. 1998).


CONCLUSION:
The law and rules are not followed. The said action is insufficient to establish contempt. If the standard for contempt were as Respondent suggests, Petitioner would be in contempt every time an officer or authority is required to care for the safety or future of the child or even for mentioning the child to anyone outside of the law and order or courts.

"The Politics of Policy, Practice and Parenting" promoting conservative patriarchal ideology. Ron Haskins is currently a senior consultant at Annie E. Casey Foundation, a private endowment that funds the creation and dissemination of fatherhood material.

Patriarchy is inherently abusive because it assumes a right to preside over women and children. Resistance to male will and behavior is viewed as challenging his authority; insubordination. Fatherhood programs and courts call abuse and resistance to it "high conflict" even though the conflict is created when women and children demand self-worth, humane treatment and limited contact. Websters defines conflict as a psychological state resulting from opposition between incompatible desires, needs, drives or impulses. The more women and children oppose control

and maltreatment, the greater the conflict. Family court has been designed to break-down this resistance rather than ensure safety, security, and recovery. Federal funding of structures that promote male importance without adjustments for men who over-step normal boundaries of respectful and proper treatment of family members sanction Patriarchy.

Custody is given to abusive fathers because fatherhood programs mandate increasing non-custodial parents (NCP) custody regardless of abuse. A hidden agenda of fatherhood initiatives legislation was the intentional overriding of State rebuttable presumption custody laws resulting in approximately 58,000 children living with sexual, physical and emotional abusers per year. Judges that are zealous advocated for Title IV-D incentives and other special groups interests including they own reelection, must be curved from harming lives of innocent children or their targeted parents and courts must provide accessible redress mechanism and protect the accused right to remedy for Constitutional violations under 10Th amendment and the Due Process Clause of the 5th 14 th amendment.

The abusive powers of the courts exercised outside the letter of the law must be divested and the orders resulted from such travesty of justice must be dissolved. At any cost and any level of the judicial system the check and balances must be restored as a matter of fair and orderly administration of justice. Courts mandate is to shield the public from menace and safeguard our democracy not to profit from family disintegration. An immediate remedy from such oppression must be satisfied under Constitutional Dictate and International Human Rights Mandate. Such practice of viciously targeting and criminalizing fit parents for the profit of the special interest tribe must be curved and prevented from irreversibly harming this case or others.

**Draconian punishments that sit above the law and beneath one's dignity endanger our children's future and our democracy. History taught us it's lessons on despotism abroad and the value of our founding fathers American freedoms. The purveyors of the American Dream shall not be targets into a misguided reenacting of autocracy. An individual zest of unlimited powers shall not be invited to poison the very nest of democracy and such tribalism shall be viewed as a threat to humanity, as it may be called anything but Justice.**

For the above and foregoing reasons Petitioner move that Respondent' motion for contempt be denied and other proper equitable relief be granted. Child be returned to Los Angeles in custody of the mother Jurisdiction be retained in Los Angeles and all actions of Contra Costa be void and case in entirety be transferred to Los Angeles.

Respectfully Submitted,

Alexandra B Georgescu
In Pro Per
June 12, 2019

**ALEXANDRA GEORGESCU**, *In pro per*
1150 Tennyson St ap 2
Manhattan Beach, CA 90266
Phone: 310 880 3998
E-Mail: brendageorgew@gmail.com

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF CONTRA COSTA

| | |
|---|---|
| Petitioner: Alexandra B Georgescu | **CASE D17-00739 and D16-04193** |
| Respondent Paul N Clemmons | **RESPONSE VEXATIOUS LITIGANT ACTION, ETC AND PETITION FOR IMMEDIATE RELIEF** |
| | *To The Presiding Judges of Contra Costa Hon Baskin, Dep 1, Supervising Judge of Family Law, Hon. Danielle Douglas, The Judicial Council and other interested parties.* |
| | ***Re: Contempt and Vexatious Litigant*** |
| | ***Date: June 28th, 2019*** |
| | ***Dep 19 and Dep 32*** |

Response Vexatious Litigant Actions and Immediate Relief Petition

I Alexandra Georgescu. Petitioner of the Paternity action and mother of Andrew I am asking Respondent' motion for Vexatious Litigant and Request for order to post security be denied and other proper equitable relief be granted. Child be returned to Los Angeles in custody of the mother Jurisdiction be retained in Los Angeles and all actions of Contra Costa be void, dissolved all Contra Costa orders of Domestic Violence restraining orders, Contempt, Vexatious Litigant,Child Custody and Support and case in entirety be transferred to Los Angeles.

I am not able to appear in Contra Costa, an inconvenient forum and un unfair place of trial with a string of persecutory unwarranted malicious actions. I am exercising my 5th Amendment

right not to testify against myself and I am invoking my right to fair and impartial tribunal, fair trier of fact and trier of law. I am asking protection under the due process clause of the 5th and 14th Amendments. Procedural and Substantiative Due Process, Bill of Rights and prohibition against vague laws in administration of Justice. I am also seeking protection under the 8th Amendment from cruel and unusual punishment under Substantiative Due Process Standard the individual rights protection from government interference under Strict Scrutiny Standard of the 14th Amendment Due Process Clause and Equal Protection" as safeguard from arbitrary denial of life liberty, property, and deprivation of parental rights, confrontation right, right to counsel and presumption of innocence by government officials.

While my rights are willfully violated in Contra Costa by Judge Hiramoto with abuse of contempt, sanctions, orders that fall outside of law, stautes and policies with unsettling discrimination of the mother a string of favoritistic orders are clering showing Bias toward the gender of the white male privileged with local connections. With abuse of authority and language on the bench and on ex parte, hostile and punitive, intimidating demeanor and threatening from the bench, failing to ensure rights and exposing growing anger Judge Hiramoto is continuing to harm me in unimaginable ways to shut me up, extremely punish me for talking, preventing my right to remedy from her willful repeated legal errors. The law does not grant such coercive powers in the court system. Courts do not have the authority to make or enforce special interest will, they are bound to statutory laws and policy.

The contempt and vexatious litigant motion should be denied and an immediate writ relief should be granted under right to remedy for constitutional and statutory law violations.

## DECLARATION AND MEMORANDUM OF POINT OF AUTHORITIES IN SUPPORT OF REQUEST TO STRIKE Vexatious ACTION AND TRANSFER CASE TO PROPER VENUE IN LOS ANGELES

I Alexandra B Georgescu declare under the penalty of perjury;

I do not submit to Contra Costa Jurisdiction, in lack of Personal or Subject Matter Jurisdiction or legal authority, an inconvenient, improper forum and unfair place of trial, precluded by Judge

Hiramoto Disqualification under 170.3 of Jan 25th, 2019, Unclean Hands, Resjudicata, Judicial Estoppel doctrines and UCCJEA Cal Fam Code 3400 signed by the father himself in December 22, 2016 stating the child resided in LA since Aug 2016, six months prior to the commencement of the proceedings. The contra costa action was started after a motion to modify a standing adjudicated and stipulated judgment in LA was denied.  I do not live in Contra Costa and I am not able to afford litigation I have a thyroid dysfunction and disabled to travel in an inconvenient forum that I can't afford and pay hotel bring witnesses. These actions are another attempt is in bad faith only to interfere with my earned and little custodial time June 13- july 14 of the summer break, my only extended time in a year with my son,  since he was unwarrantedly removed on exparte on June 15th, 2018. I have nu current income and I am asking the court for a fee waiver on my rights to obtain records according to Jameson V Desta (2018) 5 CAl 5th 594.

I am requesting declaratory evidentiary and declaratory relief  from the father's declarations or his "state of mind" as the only basis of the orders made by judge Hiramoto making my objections under Evidence Code 353, CRC 5.111 and Stay of all her orders.

Judge Hiramoto was Disqualified on Jan 25th yet she proceeded with a permanent Dv order on the same day in lack of any evidence and a contempt action for the same so called violation on Jan 11 prior to the orders of jan 23, 2019. The entire issue arise out of a prejudicial unlawful yet expired blanket gag order issued on exparte by the disciplined Judge Laettner on Nov 22, 2018 making the orders issued by a disqualified judge void. A retaliatory course of actions and an untimely response (nine days instead of 5 as the law provides) and an order to re-appoint herself only proves the personal interest in the case versus preserving the appearance of impartiality in the administration of justice.

If in fact Contra Costa was a court of truth the father's declarations could be easily refuted by facts and previous orders of the case: Matters of fact established by other courts or material facts could not be bent to favor a party to such extend and the right to remedy denied to the other discriminated party.

Here are the facts:

Father and I had an intense and serious relationship with plans of marriage and extended family interactions and promises until I found out he was a cheater as he abandoned me pregnant. I moved on and manage my pregnancy premature birth and Andrew's month long stay in the NICU alone as I did the first five years of his life. Father refused paternity medical help when needed and only support was when ordered by Los Angeles Superior Court at the conclusion of an adjudicated matter.

On Oct 29, 2012 A stipulated judgment of paternity was entered with all waivers of rights to new trial and signatures in place allowing me full custody to me and liberal visitation to him as child lived in LA both had to travel. I did and I also secured a second place in No Cal in 2013 to encourage visitations despite father having a second home in Manhattan Beach. He refused to

visit him more that 10 to 20 hours per year since his birth and only changed one diaper when I made him at the parc never offered to help or bought a baby product or cared in any ways. He called Andrew "puppy for his kids"  "skeleton in the closet"  "all on you" (referring to me)

He states on section 4 of his response that he attempted to mediate. However by court records he was order to return to mediation in 2013 for a step up plan he never did so and he provided not one evidence that "I steadfastly refused" to allow him time.

In 2016 he filled an exparte change of venue to contra costa ahead of a custody request right after Child Support collected a 18,000 K unpaid support and was moving to get his unreported income for five years.  I was sick, scared not represented I dont speak english as my first language and I was bullied and accused of things I never heard before therefore I was deemed not credible against his attorney legal authority.

In aug 2016 I lived and worked in LA at the time as it is true today as the evidence was presented yet I was accused "I fabricated them for the court" on Sep 2, 2016 venue hearing yet father signed himself a UCCJEA stating I did live in LA since Aug 2016 with his new paternity action in Contra Costa. The case was transferred prematurely opposite of what he states on 5) on January 2017 ahead of my opportunity to be heard with counsel representation on Feb 22, 2017. At that time, the Judge had no file to make orders as it was already sent out despite dates on the calendar.  He stated that Contra Costa will have to send it back so per his suggestion we filled a Motion to Dismiss the Second Paternity Action filled in Dec 22, 2016 in Contra Costa D1604193 and transfer all case back to the proper venue, where the child resided in Los Angeles.

My DV request was not false by any means as the abuse is more evident today that it ever was I live in fear and legal abuse trickeries separated from my child and psychologically tortured for no fault of my own or actual harm but "state of mind" of the father refusing financial responsibility for 6 years with various tricks and at any cost to human life. The Contempt action was an abandoned attempt to correct his actions and prevent the child support DCSS modification already set in motion at the time in May 2016.

In Contra Costa I did not submit to jurisdiction and stated it was a piecemeal litigation so the mediation on his second summons of paternity was postponed to after the venue hearing not because "I didnt attend" as he states. The venue was denied according to transcripts on a legal error by judge Santos stating " it doesn't matter where the child lives"  on April 6th 2017 and the mediation followed so did a change of custody adopting the mediator recommendation on that second summons RFO in lack of evidentiary hearing, change of circumstances or exigent need.

Only after the custody was changed in April 20, 2017 the instant case D160493 was consolidated to the transferred case under D1700739 yet the actions between Dec 22, 2016 and Feb 2017 remain under the D16 docket and the file is empty. D17 00739 did not include even after consolidation the RFO of the custody change in effect today of Dec 23, 2016 as the

basis of the trial per judge Hiramoto signature on FOAH of July 19th, 2018. His RFO was only for an Evaluation and meaningful visitations and did not provide legal grounds for the removal of the child from LA from his only custodial party since birth, his mother or removal of Legal custody, done in rebuttal arguments

In no 8) father states I refused to participate in the evaluation, when i fact I was not contacted for one year as evident by the evaluator letter admitted in evidence despite the lack of confrontation. Father continues stating I delayed the trial when he was the one requesting on the record to continue the trial from Jan to July 2018 on ex parte to fit the busy schedule of the preferred evaluator, 3th in line from the original order.

He goes on stating he was forced to file exparte modification of child custody herd on June 15th 2018 because I refused to participate in the evaluation, when in fact at the time his request was on a different "state of mind" that I could be an abduction risk. No evidence was offered to substantiate his claims yet a reversal of custody was granted on exparte with no exigent need, now making it clear it was a heist attempt to swap custody after the evaluator resigned.

He goes on No 9) stating that after a trial with extensive testimony about nine hours of the fahter alone not one witness or clear evidence but relitigating the paternity judgment of La despite prior waivers and stipulations, another dismissed by stipulation matter of 2014 and everything in between all about himself nothing about the child and his life in his past six years when his father wasn't around by his own choice. The accusations that I am not credible or I am least likely are pure speculations of prejudice against a foreign born mother on abstract concepts or impressive appearance of the father not the best interest of the child.Yet he seems self gratified that I was stripped to holidays visits only against Ca state policy of frequent and continuous contact with no path to regain it but a clear course of action to erase me and silence and prevent me from regaining access to my child.

In fact, a vexatious course as he states in No 10) of an "exhausting litigation" to obtain his "win" and death to me was set forth by himself with about 45 actions mostly on exparte since 2016 when I attempted to defend myself with 3 actions in 3 years as he continue to be the offending party. What is a mother supposed to do, give up her child to survive this inhumane treatment?

I am not even allowed to see him for mothers day or four months at the time my requests are always ignored or denied despite father not being the custodial party leaving town for weeks at a time asking when I do have any contact with my son or his caregivers or school andl don't know what homes he is in and who cares for him, I am treated like a dog denied all access or contact I can't even talk with him as orders allowed at 6:45 pm. I am allowed on call or two per week supervised and cut before saying goodby sometimes after only 2 minutes. To what do I deserve this treatment? Because I don't present well in court? Because I am a second class citizen? Because the man, that once violently attacked me in court per my attorney testimony, said so? How much do I have to endure this torture? Why is this court set to eliminate me?

When my child needed me and I was the only parent pregnant in intensive care and all I "functioned" as only parent for five yeras as the father stated himself despite his abandonment, now I am an "unfit Co parent"? As Contra Costa Court awarded him more that he even requested and glorify his mistreatment stated in prior court documents? I am reduced to inhuman and separated from my child with no legal rights of recourse for what? His statements that "the facts of the case prove to be warranted" What facts? That he moved the case to Contra Costa knowing I lived in LA saying he had a laundry list of witnesses yet after he got what he wanted he didn't bring one witness or one evidence in Contra Costa.

The fact that a stipulated Judgement existed in LA and he waived his right to a new trial yet he engineered a legal fraud to bypass it ? The fact that I was allowed to travel to Romania with my child and never stayed moore that 3 months on the instance I had a medical emergency, not 6 month as he stated. The fact that "I moved to LA in 2016, without a court order" when in fact the only court orders were in LA at the time? This is evident in the court records. The fact that my cousin the only and very credible witness at trial stated "I have a sacrificial devotion to my son" and that"I single-handed raised him" and that he is "doing great in my custody" thriving, well educated and easy going. The fact that the father is "more likely" to encourage visitations without a court order" when in fact he openly despises the court orders as well depriving me of even the limited time allowed or interfering with any possible bad faith actions including this during my only extended time of the year the summer break.

He father states he has no recourse but to harm me with this orders and actions. How about attempting co-parenting as a change from all the eight years of pain he willfully inflicted on me?

As for his claim of 5 litigations, the standard is not meet:

1. July 2016  a contempt for his unpaid support and undeclared income was not heard as I dropped the matter and child support pursued the enforcement of the orders.

2. His claimed 2 motions of reconsiderations was in fact only one continued two times until Feb 22, 2017. At the time I finally got my day in court with legal representation The file was not present, prematurely transferred to CC despite dates on the calendar so the judge could not rule and said "Contra Costa will have to transfer it back"

3. Feb 14, 2017 motion to Dismiss Conta Costa Summons as piecemeal litigation and to transfer back to the proper Jurisdiction was denied in legal error ad 10K sanctions were imposed already on June 1, 2017. How many times could Contra costa punish me for stating a matter of fact? I live in LA and CC is inconvenient forum preventing me equal access to justice.

4. Nov 27,2017 motion to remove evaluator for was for cause and lack of mandatory disclosures

5. Feb 22 DV request for order was in part granted and I prevailed  in eliminating the Contra Costa DV orders of Dec 25, 209 by "dismiss of all and any restraining orders "

The facts of the case show "unmeritous motions" and actions about 45 of them initiated by the the crying wolf when abuse is the persecution and inability to bring into evidence material facts like I live in LA I did in 2016 when the child was born and for most of the last twenty years. There is an adjudicated stipulated judgment of paternity in Los Angeles entered in Oct 29, 2012 and Respondent waived his right to a new trial or relitigation yet he did just that. This matters of fact are clear and convincing by irrefutable evidence standard of proof with court entered statements, stipulations signatures and binding agreements.

In Conclusion, the Vexatious litigant motion should be denied and all orders of the disqualified judge be void as the disqualification biased and prejudice arised and a fair place of trial should be returned to Los Angeles to promote the ends of Justice.

"When the mistakes fall disproportionately on one side it is no respect to the notion of truth to pretend that everything is even" As a target of the local tribalism in Contra Costa I attest to the inequality of access to justice or equal protection under the law. Perhaps Judge Hiramoto could self reflect, "self correct" or self disqualify but before she reoffends the entire system an immediate intervention is needed to diminish the appearance of bias and restore public trust in the administration of justice.

 The Vexatious litigant motion should be denied and orders of the disqualified judge be void and a fair place of trial should be promoted

Respectfully submitted,
*B.G*
Alexandra B Georgescu
In Pro Per
June 16, 2019, Manhattan Beach Ca

FL-415

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(name, state bar number, and address)* or GOVERNMENTAL AGENCY *(pursuant to Family Code, §§ 17400, 17404)*:<br><br>PREPARED BY THE COURT | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.*(Optional)*:                    FAX NO.*(Optional)*:

E-MAIL ADDRESS*(Optional)*:

ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**   CONTRA COSTA
  STREET ADDRESS:
  MAILING ADDRESS:
  CITY AND ZIP CODE:
  BRANCH NAME:

**F I L E D**

MAY 10 2019

K. BIEKER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____
    L. Villaspin, Deputy Clerk

PETITIONER/PLAINTIFF: ALEXANDRA B GEORGESCU

RESPONDENT/DEFENDANT: PAUL CLEMMONS

OTHER PARENT:

**FINDINGS AND ORDER REGARDING CONTEMPT**
**(Family Law)**

CASE NUMBER:
D17-00739

---

1. This matter proceeded as follows:  ☐ Uncontested   ☐ By stipulation   ☐ Contested
   a. Date: 05/10/2019        Dept.: 19          Judicial officer:  CHERYL R. MILLS
   b. ☐ Petitioner/Plaintiff present                    ☐ Attorney present *(name)* :
   c. ☐ Respondent/Defendant present               ☒ Attorney present *(name)*: *Stephanie Mazzoncini*
   d. ☐ Other parent present                            ☐ Attorney present *(name)* :
   e. ☐ Governmental agency by *(name)* :
   f. ☒ Other appearances *(specify)*: *Clerk L. Villaspin*       /      SARAH THOMPSON, C.S.R. #12635
   g. ☐ On the *Order to Show Cause and Affidavit for Contempt* (form FL-410)
      Filed by PUAL NORMAN CLEMMONS          on *(date)*:  01/23/2019

2. The "Citee" for purposes of this order is  ☒ Petitioner/Plaintiff   ☐ Respondent/Defendant
   ☐ Other *(specify)* :

3. a. Citee has been advised of rights to:
   (1) ☐ counsel                                                    ☐ requested      ☐ waived right
   (2) ☐ appointed counsel                                     ☐ requested      ☐ waived right
   (3) ☐ continuance to obtain counsel                    ☐ requested      ☐ waived right
   (4) ☐ a hearing/trial (to cross-examine, call, and compel the attendance of    ☐ requested      ☐ waived right
           witnesses)
   (5) ☐ privilege against self-incrimination                ☐ requested      ☐ waived right
   (6) ☐ other *(specify)* :                                        ☐ requested      ☐ waived right
   b. ☐ Written advisement and waiver of rights attached.

**THE COURT FINDS:**

4. ☐ Citee knowingly, intelligently and voluntarily waived rights as set forth in item 3.

5. a. ☐ There are valid orders of the court.
   b. ☐ Citee had knowledge of the orders.
   c. ☐ Citee violated the orders by *(specify)*:

   d. ☐ Citee has freely and voluntarily admitted to the defaults/violations specified in item 6.
   e. ☐ There is a factual basis for the plea entered.
   f. ☐ Other *(specify)*:

6. Citee is guilty of contempt of court for the following counts (defaults/violations) alleged in the *Order to Show Cause and Affidavit for Contempt* (form FL-410) *(specify)*:

---

Form Approved for Optional Use
Judicial Council of California
FL-415 [Rev. July 1, 2003]     CEB | Essential Former

**FINDINGS AND ORDER REGARDING CONTEMPT**
**(Family Law-Domestic Violence Prevention-**
**Uniform Parentage-Governmental)**

Page 1 of 3

Family Code, §§ 17400, 17402, 17404
CCP, §§ 1209, 1218
www.courtinfo.ca.gov

| PETITIONER/PLAINTIFF: ALEXANDRA B. GEORGESCU | CASE NUMBER: |
|---|---|
| RESPONDENT/DEFENDANT: PAUL CLEMMONS | D17-00739 |
| OTHER PARENT: | |

19. Orders for payments required to be made as conditions of probation or suspension of sentence in this order do not modify a court ordered support obligation.

20. Citee must provide written notification to the superior court clerk of any change in residence and to
☐ the local child support agency   ☐ the other party
of any change of residence, income, or employment within 10 days of the change.

21. ☐ A wage and earnings assignment will issue.

22. ☐ This matter is continued to *(date)* :                                              at *(specify time)* :
in court department *(specify)* :                     room *(specify)* :        of this court for   ☐ further hearing
☐ compliance review. Citee is ordered to personally appear in court on that date and time.
WARNING: Failure to appear may result in issuance of a bench warrant for citee's arrest.

23. ☐ A *Warrant of Attachment* will issue for citee's arrest. Bail is set in the sum of: $
☐ Execution of the *Warrant of Attachment* is stayed until *(date)* :
at *(specify court name)* :

24. ☒ Other *(specify)* :
The Court re-issues an Order To Show Cause for Citee, Ms.
Georgescu's failure to appear at today's hearing, as to why a bench
warrant in the amount of $20,000 should not be issued for arrest.
The Court sets this matter on June 28, 2019 at 1:30 p.m. Department
19.

The second contempt filed on 4/26/19 currently set on May 31, 2019
at 1:30 p.m. is also continued to June 28, 2019 at 1:30 p.m. in
Department 19.

25. Number of pages attached: _____

Date: **MAY 10 2019**

_____
(JUDICIAL OFFICER OF THE SUPERIOR COURT)

☐ Signature follows last attachment

☐ Approved as conforming to court order and findings:
Date:

▶ _____
(SIGNATURE OF ATTORNEY FOR CITEE)

☐ The citee agrees to the above terms:
Date:

▶ _____
(SIGNATURE OF CITEE)

**FINDINGS AND ORDER REGARDING CONTEMPT**
(Family Law-Domestic Violence Prevention-
Uniform Parentage-Governmental)

CEB Essential Forms
ceb.com

671

APR 24 2019  2:33

**FL-410**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(name, State Bar number, and address):* <br> Terence Daniel Doyle 113108 <br> Doyle Quane Freeman Family Law Group <br> 571 Hartz Avenue <br> Danville, CA 94526 <br> TELEPHONE NO.: (925)314-2320    FAX NO. *(optional)*: (925)855-4344 <br> E-MAIL ADDRESS *(optional)*: TDoyle@FamilyLawGroup.com <br> ATTORNEY FOR *(name)*: Paul Norman Clemmons | **FOR COURT USE ONLY** <br><br> F I L E D <br> APR 26 2019 <br> K. BAKER CLERK OF THE COURT <br> SUPERIOR COURT OF CALIFORNIA <br> COUNTY OF CONTRA COSTA <br> By <br> N. Richards, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Contra Costa
STREET ADDRESS: 751 Pine Street
MAILING ADDRESS: P.O. Box 911
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME:

PETITIONER/PLAINTIFF: Alexandra B. Georgescu
RESPONDENT/DEFENDANT: Paul Norman Clemmons
OTHER PARTY/PARENT:

| **ORDER TO SHOW CAUSE AND** <br> **AFFIDAVIT FOR CONTEMPT** | **CASE NUMBER:** <br> D17-00739 |
|---|---|

| **NOTICE!** | **¡AVISO!** |
|---|---|
| A contempt proceeding is criminal in nature. If the court finds you in contempt, the possible penalties include jail sentence, community service, and fine. <br><br> You are entitled to the services of an attorney, who should be consulted promptly in order to assist you. If you cannot afford an attorney, the court may appoint an attorney to represent you. | Un proceso judicial por desacato es de índole criminal. Si la corte le declara a usted en desacato, las sanciones posibles incluyen penas de prisión y de servicio a la comunidad, y multas. <br><br> Usted tiene derecho a los servicios de un abogado, a quién debe consultar sin demora para obtener ayuda. Si no puede pagar a un abogado, la corte podrá nombrar a un abogado para que le represente. |

1. TO CITEE *(name of person you allege has violated the orders):*
   Alexandra B. Georgescu
2. YOU ARE ORDERED TO APPEAR IN THIS COURT AS FOLLOWS, TO GIVE ANY LEGAL REASON WHY THIS COURT SHOULD NOT FIND YOU GUILTY OF CONTEMPT, PUNISH YOU FOR WILLFULLY DISOBEYING ITS ORDERS AS SET FORTH IN THE AFFIDAVIT BELOW AND ANY ATTACHED *AFFIDAVIT OF FACTS CONSTITUTING CONTEMPT;* AND REQUIRE YOU TO PAY, FOR THE BENEFIT OF THE MOVING PARTY, THE ATTORNEY FEES AND COSTS OF THIS PROCEEDING.

Date: 6-28-19    Time: 1:30 pm   Dept./ Address of 19    Rm.:

Date: 4/25/19   ☒ same as noted above  ☒ other *(specify)* ▸ 725 Court St. Martinez, CA 94553

_(signature)_   **JUDICIAL OFFICER**

**AFFIDAVIT SUPPORTING ORDER TO SHOW CAUSE FOR CONTEMPT**
3. ☒ An *Affidavit of Facts Constituting Contempt* (form FL-411 or FL-412) is attached.
4. Citee has willfully disobeyed certain orders of this court as set forth in this affidavit and any attached affidavits.
5. a. Citee had knowledge of the order in that
   (1) ☐ citee was present in court at the time the order was made.
   (2) ☒ citee was served with a copy of the order.
   (3) ☐ citee signed a stipulation upon which the order was based.
   (4) ☐ other *(specify)*:

   ☐ Continued on Attachment 5a(4).
   b. Citee was able to comply with each order when it was disobeyed.
6. Based on the instances of disobedience described in this affidavit
   a. ☐ I have not previously filed a request with the court that the citee be held in contempt.
   b. ☒ I have previously filed a request with the court that the citee be held in contempt *(specify date filed and results)*:
      January 23, 2019; Petitioner failed to appear at the first scheduled arraignment; the matter is set for continued hearing on May 10, 2019 at 1:30 P.M. in Department 19.
      ☐ Continued on Attachment 6b.

Form Adopted for Mandatory Use
Judicial Council of California
FL-410 [Rev. January 1, 2015]

**ORDER TO SHOW CAUSE AND AFFIDAVIT FOR CONTEMPT**

Page 1 of 4

Family Code, § 292;
Code of Civil Procedure, §§ 1211.5, 2015.5
www.courts.ca.gov

CEB Essential Forms
ceb.com

Clemmons, Paul

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Georgescu v. Clemmons | D17-00739 |

**ATTACHMENT** *(Number):* 1
*(This Attachment may be used with any Judicial Council form.)*

The Restraining Order After Hearing(RO) issued January 25, 2019 (attached hereto and incorporated herein for reference as Exhibit "A"), restrains Petitioner from harassing me or disturbing my peace. Petitioner was personally served with the RO on February 13, 2019 (Proof of Service is attached hereto and incorporated herein for reference as Exhibit "B").

On March 13, 2019, Petitioner either impersonated her mother, Gabriela Georgescu, via email or directed her mother to email my employer. Gabriela Georgescu forwarded pleadings written by Petitioner to my employer. The pleadings are inflammatory and do little except attack my character. The email asked my employer to review the pleadings "in order to prevent other abuses" and "restor[e] justice". A copy of the email is attached and incorporated herein for reference as Exhibit "C".

Shari Fallek Coats, Deputy General Counsel for my firm, received the email and forwarded the same to me on March 15, 2019. Ms. Coats was extremely displeased to have received correspondence of such a personal nature and repeatedly warned me to clean up the situation. Petitioner has a long history of harassing and embarrassing me in the workplace. She has accosted me without warning at client functions, written defamatory emails to my colleagues and clients, and sent correspondence directly to my HR department on several occassions. The incident that precipitated my filing for the original RO was when Petitioner emailed my HR representatives asking them to launch an ethics investigation against me and levying multiple untrue accusations.

Issuance of the RO has not stopped Petitioner's harassing behavior. She continues to harass me at home and in the workplace. However, this time she is attempting to hide her interference by using her mother's email address. It is no mystery who orchestrated this harassment. Gabriela Georgescu has no interest in harassing me in the workplace. Petitioner, however, does and has on many occasions. Petitioner's actions of either ghostwriting this harassing email to my employer or directing her mother to write the email of March 14, 2019 constitute contempt of the RO.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1
*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]



**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

Clemmons, Paul





Begin forwarded message:

**From:** "Coats, Shari Fallek (US - New York)" <scoats@deloitte.com>
**Date:** March 15, 2019 at 3:03:09 PM PDT
**To:** "Clemmons, Paul (US - San Francisco)" <pclemmons@deloitte.com>
**Cc:** "Abernethy, Maria (US - Boston)" <mabernethy@DELOITTE.com>
**Subject: FW: [EXT] Fwd: my declaration filled**

Per our discussion.  Thanks, and Maria will set up the call with the Canadian folks on that partner matter.  Have a nice weekend.

Shari Fallek Coats
Deputy General Counsel
Deloitte
1221 Avenue of the Americas, New York, NY, 10020
Tel/Direct: +1 212 492 4191 | Mobile: +1 646 460 4685
scoats@deloitte.com | www.deloitte.com
Member of Deloitte Touche Tohmatsu Limited


-----Original Message-----
From: Gabriela Georgescu <profgaby10@gmail.com>
Sent: Thursday, March 14, 2019 2:37 PM
To: Gabriela Georgescu <profgaby10@gmail.com>
Subject: [EXT] Fwd: my declaration filled

---------- Forwarded message ---------

Pleadings for my daughter  and my grandson ,ahead of Hearing tomorrow- March 15-th in order to prevent other abuses. Please, assist in restoring justice.
          Respectfully,
          Ph.D. Gabriela Georgescu

1

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

v.E.1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Family Division
### Stanley Mosk Dept. - 6

19STRO01181
**Georgescu, Alexandra B**
vs
**Clemmons, Paul N**

March 15, 2019
8:30 AM

Honorable Kimberly Dotson, Commissioner

Sean McGowan, Judicial Assistant
Theresa Allen, Court Services Assistant

Kimberly Dorn (#12809), Court Reporter

**NATURE OF PROCEEDINGS:** Request - DV Prevention w/ Minor Child (Case Initiation) filed by
Petitioner on February 22, 2019

The following parties are present for the aforementioned proceeding:

        Paul Clemmons, Respondent via CourtCall
        Alexandra Georgescu, Petitioner

The matter is called for hearing.

The parties are sworn and testify.

Having found no basis for the issuance of a permanent restraining order, the Court hereby denies Petitioner's
request. Any and all restraining orders are hereby dissolved.

The case is ordered dismissed.

Doc# 1 Page# 1 - Doc ID = 1765085391 - Doc Type = Minute Order



## Zandonella
### REPORTING SERVICE, INC.

| | | |
|---|---|---|
| ◆ Computerized Reporting | **Certified Shorthand Reporters** | ◆ Daily Transcripts |
| ◆ Deposition Suites | 2321 Stanwell Drive ◆ Concord, CA  94520 | ◆ Copying Service |
| ◆ Video Depositions | Ph: (925) 685-6222 ◆ Fax: (925) 685-3829 | ◆ Keyword Indexing |
| ◆ Document Depository | www.ZandonellaZRS.com | ◆ Brief Copying/Filing |

March 15, 2019

Alexandra B. Georgescu
Alexandra B. Georgescu, In Pro Per
1150 Tennyson STreet, #2
Manhattan Beach, CA 90266

RE:   ALEXANDRA B. GEORGESCU vs. PAUL NORMAN CLEMMONS
      Our File No. 85473- 1 Part(s)

Our client, **Stephanie Mazzoncini, Esq.**, has commissioned Zandonella Reporting Service, Inc. to obtain records on **SEE ATACHMENT 3** from the following custodian for use in the above referenced case.

IF COPIES ARE DESIRED, PLEASE INDICATE BELOW BY MARKING Y OR N.
_____   **1   Contra Costa County Sheriff's Department (Any & All Records)**

I agree that I and/or my firm will be responsible for payment of the copies of records ordered on this waiver.  I acknowledge that invoices are due and payable within 30 days of receipt and that actions for collection of services are performable and payable in Contra Costa County, State of California.

_____   I DO AGREE TO WAIVE THE NOTICE PERIOD.
_____   I DO NOT AGREE TO WAIVE THE NOTICE PERIOD.

Dated:  March 15, 2019

_____
Signed

**Alexandra B. Georgescu**
**Alexandra B. Georgescu, In Pro Per**
**1150 Tennyson STreet, #2**
**Manhattan Beach, CA 90266**
Petitioner

Please Return To:   **Zandonella Reporting Service, Inc.**
                    **2321 Stanwell Drive**
                    **Concord, CA 94520-4808**
                    **925-685-6222  Fax 925-685-3829**

NOTE:  RETURN OF THIS FORM IS REQUIRED WITHIN TWENTY (20) DAYS  TO PROCESS YOUR REQUEST.  ANY CANCELLATION OF THE ABOVE MUST BE IN WRITING.  IF THE RECORDS HAVE ALREADY BEEN COPIED AND FEES INCURRED, THEN BILLING WILL BE PRORATED ACCORDINGLY.

25(

IAN 2 5 2019
3.18

**DV-130**

## Restraining Order After Hearing
(Order of Protection)

[X] Original Order      [ ] _____ Amended Order

(1) **Name of Protected Person:**

PAUL NORMAN CLEMMONS

Your lawyer in this case (if you have one):

Name: TERENCE DANIEL DOYLE  State Bar No.: 113108

Firm Name: DOYLE, QUANE, FREEMAN FAMILY LAW GROUP

Address (If you have a lawyer for this case, give your lawyer's
information. If you do not have a lawyer and want to keep your home
address private, give a different mailing address instead. You do not have
to give your telephone, fax, or e-mail.):

Address: 571 HARTZ AVE

City: DANVILLE  State: CA Zip: 94526

Telephone: 925-314-2320  Fax: 925-855-4344

E-Mail Address: TDOYLE@FAMILYLAWGROUP.COM

*Clerk stamps date here when form is filed.*

FILED
JAN 25 2019

Fill in court name and street address:

Superior Court of California, County of

Superior Court of Contra Costa County
751 Pine Street
PO Box 911
Martinez, CA 94553

Clerk fills in case number when form is filed.

(2) **Name of Restrained Person:**

Case Number:
D17-00739  D17-00739

ALEXANDRA B. GEORGESCU

Description of restrained person:

| | |
|---|---|
| Sex: [ ] M [X] F Height: 5'5  Weight: 160  Hair Color: BROWN  Eye Color: BROWN |
| Race: CAUCASIAN  Age: 41  Date of Birth: |
| Address (if known): 1150 TENNYSON STREET |
| City: MANHATTAN BEACH  State: CA  Zip: 90266 |
| Relationship to protected person: FORMER GIRLFRIED/MOTHER OF CHILD |

(3) [ ] **Additional Protected Persons**

In addition to the person named in (1), the following persons are protected by orders as indicated in items (6)
and (7) (family or household members):

Full name                          Relationship to person in (1)      Sex      Age

[ ] Check here if there are additional protected persons. List them on an attached sheet of paper and write,
"DV-130, Additional Protected Persons," as a title.

(4) **Expiration Date**

The orders, except as noted below, end on

(date): 1/25/2024  at (time): _____  [ ] a.m. [ ] p.m. or [X] midnight

• If no date is written, the restraining order ends three years after the date of the hearing in item (5)(a).
• If no time is written, the restraining order ends at midnight on the expiration date.
• Note: Custody, visitation, child support, and spousal support orders remain in effect after the restraining order
  ends. Custody, visitation, and child support orders usually end when the child is 18.
• The court orders are on pages 2, 3, 4, and 5 and attachment pages (if any).

**This order complies with VAWA and shall be enforced throughout the United States. See page 5.**

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2016, Mandatory Form
Family Code, § 6200 et seq. Approved by DOJ

**Restraining Order After Hearing (CLETS—OAH)**
(Order of Protection)
(Domestic Violence Prevention)

DV-130, Page 1 of 7

CEB  Essential
Forms
ceb.com

Case Number:
D17-00739

**(5) Hearings**

a. The hearing was on *(date):* JAN 25 2019 with *(name of judicial officer):* JONI HIRAMOTO

b. These people were at the hearing *(check all that apply):*

☑ The person in (1)   ☐ The lawyer for the person in (1) *(name):* _____

☐ The person in (2)   ☐ The lawyer for the person in (2) *(name):* *Continued to 1/25/19 at (2)'s request (POS also on file)*

c. The people in (1) and (3) must return to Dept. _____ of the court on *(date):* _____

at *(time):* _____   ☐ a.m. ☐ p.m.   to review *(specify issues):* _____

## To the person in (2)

**The court has granted the orders checked below. Item (9) is also an order. If you do not obey these orders, you can be arrested and charged with a crime. You may be sent to jail for up to one year, pay a fine of up to $1,000, or both.**

**(6) ☑ Personal Conduct Orders**

a. The person in (2) must not do the following things to the protected people in (1) and (3) :

☑ Harass, attack, strike, threaten, assault *(sexually or otherwise),* hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, impersonate *(on the Internet, electronically or otherwise),* or block movements.

☑ Contact, either directly or indirectly, by any means, including, but not limited to, by telephone, mail, e-mail, or other electronic means.

☑ Take any action, directly or through others, to obtain the addresses or locations of any protected persons. *(If this item is not checked, the court has found good cause not to make this order.)*

b. Peaceful written contact through a lawyer or process server or another person for service of legal papers related to a court case is allowed and does not violate this order.

c. ☑ Exceptions: Brief and peaceful contact with the person in (1), and peaceful contact with children in (3), as required for court-ordered visitation of children, is allowed unless a criminal protective order says otherwise.

**(7) ☑ Stay-Away Order**

a. The person in (2) must stay at least *(specify):* _100_ yards away from *(check all that apply):*

☑ The person in (1)               ☐ School of person in (1)

☑ Home of person in (1)           ☐ The persons in (3)

☑ The job or workplace of person in (1)   ☑ The child(ren)'s school or child care

☑ Vehicle of person in (1)        ☐ Other *(specify):* _____

b. ☑ Exceptions: Brief and peaceful contact with the person in (1), and peaceful contact with children in (3), as required for court-ordered visitation of children, is allowed unless a criminal protective order says otherwise.

**(8) ☐ Move-Out Order**

The person in (2) must move out immediately from *(address):* n/a

**(9) No Guns or Other Firearms or Ammunition**

a. The person in (2) cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get guns, other firearms, or ammunition.

## This is a Court Order.

Revised July 1, 2016
CEB® Essential Forms
ceb.com
**Restraining Order After Hearing (CLETS—OAH)**
**(Order of Protection)**
**(Domestic Violence Prevention)**
DV-130, Page 2 of 7 →

Case Number: D1*-00739

**b. The person in ② must:**

- Sell to, or store with, a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms within his or her immediate possession or control. Do so within 24 hours of being served with this order.
- Within 48 hours of receiving this order, file with the court a receipt that proves guns have been turned in, sold, or stored. (Form DV-800, *Proof of Firearms Turned In, Sold, or Stored, may be used for the receipt.*) Bring a court filed copy to the hearing.

c. ☐ The court has received information that the person in ② owns or possesses a firearm.

d. ☐ The court has made the necessary findings and applies the firearm relinquishment exemption under Family Code section 6389(h). Under California law, the person in ② is not required to relinquish this firearm *(specify make, model, and serial number of firearm):* _____
The firearm must be in his or her physical possession only during scheduled work hours and during travel to and from his or her place of employment. Even if exempt under California law, the person in ② may be subject to federal prosecution for possessing or controlling a firearm.

**⑩ ☒ Record Unlawful Communications**

The person in ① has the right to record communications made by the person in ② that violate the judge's orders.

**⑪ ☐ Care of Animals**

The person in ① is given the sole possession, care, and control of the animals listed below. The person in ② must stay at least _____ yards away from and not take, sell, transfer, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of the following animals: _____

**⑫ ☒ Child Custody and Visitation**

Child custody and visitation are ordered on the attached Form DV-140, *Child Custody and Visitation Order* or *(specify other form):* *follow previous orders dr 10/29/18*

**⑬ ☒ Child Support**

Child support is ordered on the attached Form FL-342, *Child Support Information and Order, Attachment* or *(specify other form):* *Court stays $824 a month until Mr Clemmons*

**⑭ ☐ Property Control** *arearpayment of $18,609.08 is caught up. See attached*

Only the person in ① can use, control, and possess the following property: *n/a*

**⑮ ☐ Debt Payment**

The person in ② must make these payments until this order ends: *n/a*

Pay to: _____ For: _____ Amount: $_____ Due date: _____
Pay to: _____ For: _____ Amount: $_____ Due date: _____
Pay to: _____ For: _____ Amount: $_____ Due date: _____

☐ *Check here if more payments are ordered. List them on an attached sheet of paper and write "DV-130, Debt Payments" as a title.*

**⑯ ☐ Property Restraint** *n/a*

The ☐ person in ① ☐ person in ② must not transfer, borrow against, sell, hide, or get rid of or destroy any property, including animals, except in the usual course of business or for necessities of life. In addition, the person must notify the other of any new or big expenses and explain them to the court. *(The person in ② cannot contact the person in ① if the court has made a "No-Contact" order.)*

Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate this order.

**This is a Court Order.**

| Case Number: |
| --- |
| D17-00739 |

**17** ☐ **Spousal Support**

Spousal support is ordered on the attached Form FL-343, *Spousal, Partner, or Family Support Order Attachment* or *(specify other form)*: _____n/a_____

**18** ☐ **Rights to Mobile Device and Wireless Phone Account**

a. ☐ Property Control of Mobile Device and Wireless Phone Account

Only the person in ① can use, control, and possess the following property:

Mobile device *(describe)* _____ and account *(phone number)*: _____

Mobile device *(describe)* _____ and account *(phone number)*: _____

☐ *Check here if you need more space. Attach a sheet of paper and write "DV-130 Rights to Mobile Device and Wireless Phone Account" as a title.*

b. ☐ Debt Payment

The person in ② must make these payments until this order ends:

Pay to *(wireless service provider)*: _____ Amount: $_____ Due date: _____

c. ☐ Transfer of Wireless Phone Account

The court has made an order transferring one or more wireless service accounts from the person in ② to the person in ① . These orders are contained in a separate order (Form DV-900).

**19** ☐ **Insurance**

☐ The person in ① ☐ the person in ② is ordered NOT to cash, borrow against, cancel, transfer, dispose of, or change the beneficiaries of any insurance or coverage held for the benefit of the parties, or their child(ren), if any, for whom support may be ordered, or both.

**20** ☐ **Lawyer's Fees and Costs**

The person in ② must pay the following lawyer's fees and costs:

Pay to: _____ For: _____ Amount: $_____ Due date: _____

Pay to: _____ For: _____ Amount: $_____ Due date: _____

**21** ☐ **Payments for Costs and Services**

The person in ② must pay the following:

Pay to: _____ For: _____ Amount: $_____ Due date: _____

Pay to: _____ For: _____ Amount: $_____ Due date: _____

Pay to: _____ For: _____ Amount: $_____ Due date: _____

☐ *Check here if more payments are ordered. List them on an attached sheet of paper and write "DV-130, Payments for Costs and Services" as a title.*

**22** ☐ **Batterer Intervention Program**

The person in ② must go to and pay for a 52-week batterer intervention program and show written proof of completion to the court. This program must be approved by the probation department under Penal Code § 1203.097. The person in ② must enroll by *(date)*: _____ or if no date is listed, must enroll within 30 days after the order is made. The person in ② must complete, file and serve Form 805, Proof of Enrollment for Batterer Intervention Program.

**23** ☑ **Other Orders**

Other orders *(specify)*: Ct finds that the rebuttable presumption of FC 3044 has been raised by the proof shown at this hearing,

**24** **No Fee to Serve (Notify) Restrained Person**

If the sheriff or marshal serves this order, he or she will do it for free.

**This is a Court Order.**

Case Number:
D17-00739

(25) **Service**

a. ☐ The people in (1) and (2) were at the hearing or agreed in writing to this order. No other proof of service is needed.

b. ☑ The person in (1) was at the hearing on the request for original orders. The person in (2) was not present.

   (1) ☐ Proof of service of Form DV-109 and Form DV-110 (if issued) was presented to the court. The judge's orders in this form are the same as in Form DV-110 except for the end date. The person in (2) must be served. This order can be served by mail.

   (2) ☑ Proof of service of Form DV-109 and Form DV-110 (if issued) was presented to the court. The judge's orders in this form are different from the orders in Form DV-110, or Form DV-110 was not issued. The person in (2) must be personally "served" (given) a copy of this order.

c. ☐ Proof of service of Form FL-300 to modify the orders in Form DV-130 was presented to the court.

   (1) ☐ The people in (1) and (2) were at the hearing or agreed in writing to this order. No other proof of service is needed.

   (2) ☐ The person in ☐ (1) ☐ (2) was not at the hearing and must be personally "served" (given) a copy of this amended order.

(26) ☐ **Criminal Protective Order**

a. ☐ Form CR-160, *Criminal Protective Order—Domestic Violence,* is in effect.
   Case Number: _____ County: _____ Expiration Date: _____

b. ☐ Other Criminal Protective Order in effect *(specify):* _____
   Case Number: _____ County: _____ Expiration Date: _____
   *(List other orders on an attached sheet of paper. Write "DV-130, Other Criminal Protective Orders" as a title.)*

c. ☐ No information has been provided to the judge about a criminal protective order.

(27) ☑ **Attached pages are orders.**

• Number of pages attached to this seven-page form: 2

• All of the attached pages are part of this order.

• Attachments include *(check all that apply):*
   ☐ DV-140   ☐ DV-145   ☐ DV-150   ☐ FL-342   ☐ FL-343   ☐ DV-900
   ☐ Other *(specify):* _____

Date: **JAN 25 2019 J.T.H.**             _____
                                         *Judge (or Judicial Officer)*

**Certificate of Compliance With VAWA**

This restraining (protective) order meets all "full faith and credit" requirements of the Violence Against Women Act, 18 U.S.C. § 2265 (1994) (VAWA) upon notice of the restrained person. This court has jurisdiction over the parties and the subject matter; the restrained person has been or will be afforded notice and a timely opportunity to be heard as provided by the laws of this jurisdiction. This order is valid and entitled to enforcement in each jurisdiction throughout the 50 states of the United States, the District of Columbia, all tribal lands, and all U.S. territories, commonwealths, and possessions and shall be enforced as if it were an order of that jurisdiction.

**This is a Court Order.**

Revised July 1, 2016

CEB Essential Forms
ceb.com

**Restraining Order After Hearing (CLETS—OAH)**
**(Order of Protection)**
(Domestic Violence Prevention)

DV-130, Page 5 of 7

Case Number:
D17-00739

## Warnings and Notices to the Restrained Person in ②

**If you do not obey this order, you can be arrested and charged with a crime.**

- If you do not obey this order, you can go to jail or prison and/or pay a fine.
- It is a felony to take or hide a child in violation of this order.
- If you travel to another state or to tribal lands or make the protected person do so, with the intention of disobeying this order, you can be charged with a federal crime.

## You cannot have guns, firearms, and/or ammunition.



You cannot own, have, possess, buy or try to buy, receive or try to receive, or otherwise get guns, other firearms, and/or ammunition while the order is in effect. If you do, you can go to jail and pay a $1,000 fine. Unless the court grants an exemption, you must sell to, or store with, a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms that you have or control. The judge will ask you for proof that you did so. If you do not obey this order, you can be charged with a crime. Federal law says you cannot have guns or ammunition while the order is in effect. Even if exempt under California law, you may be subject to federal prosecution for possessing or controlling a firearm.

## Instructions for Law Enforcement

### Start Date and End Date of Orders

The orders *start* on the earlier of the following dates:

- The hearing date in item ⑤ (a) on page 2, or
- The date next to the judge's signature on this

The orders *end* on the expiration date in item ④ on page 1. If no date is listed, they end three years from the hearing

### Arrest Required If Order Is Violated

If an officer has probable cause to believe that the restrained person had notice of the order and has disobeyed the order, the officer must arrest the restrained person. (Pen. Code, §§ 836(c)(1), 13701(b).) A violation of the order may be a violation of Penal Code section 166 or 273.6.

### Notice/Proof of Service

Law enforcement must first determine if the restrained person had notice of the orders. If notice cannot be verified, the restrained person must be advised of the terms of the orders. If the restrained person then fails to obey the orders, the officer must enforce them. (Family Code, § 6383.)

Consider the restrained person "served" (notified) if:

- The officer sees a copy of the *Proof of Service* or confirms that the *Proof of Service* is on file; *or*
- The restrained person was at the restraining order hearing or was informed of the order by an officer. (Fam. Code, § 6383; Pen. Code, § 836(c)(2).) An officer can obtain information about the contents of the order in the Domestic Violence Restraining Order System (DVROS). (Fam. Code, § 6381(b)-(c).)

### If the Protected Person Contacts the Restrained Person

Even if the protected person invites or consents to contact with the restrained person, the orders remain in effect and must be enforced. The protected person cannot be arrested for inviting or consenting to contact with the restrained person. The orders can be changed only by another court order. (Pen. Code, §13710(b).)

## This is a Court Order.

Revised July 1, 2016

ceb.com
Essential Forms

**Restraining Order After Hearing (CLETS—OAH)**
**(Order of Protection)**
**(Domestic Violence Prevention)**

DV-130, Page 6 of 7

MC-020

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| — Georgescu v. Clemmons | D17-00739 |

1    The court additionally orders the following:

2    (1) Respondent shall be credited $18,609.68 for child support overpayments made through the Department

3    of Child Support Services website. Future monthly child support payments due from Respondent to

4    Petitioner shall be stayed until Respondent has a zero net balance.

5

6    (2) The parties shall share the following additional child support expenses 50/50:

7      (a) Child care costs related to employment or reasonably necessary job training;

8      (b) Reasonable uninsured health-care costs for the child;

9      (c) Costs related to the educational or other special needs of the child; and

10      (d) Travel expenses for visitation-- receiving party is responsible for travel costs for Andrew and

11      himself/herself.

12    This order bears no change from the Court's June 1, 2017 Findings and Order After Hearing.

Contra
Costa
Superior
Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26    *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*

27    This page may be used with any Judicial Council form or any other paper filed with the court.

Page 1

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
Optional Form

CEB ceb.com | Essential Forms

**ADDITIONAL PAGE**   Clemmons, Paul
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501